KENT D. CRAWFORD, AND WIFE, LYNN B. CRAWFORD, PLAINTIFFS v. JAMIL A. FAYEZ, DEFENDANT

No. 9218SC573

(Filed 19 October 1993)

1. **Evidence and Witnesses § 110 (NCI4th)— medical malpractice—evidence of habit—standards for admission**

Proof of habit by evidence of specific instances of conduct is permitted by N.C.G.S. § 8C-1, Rule 406; however, the trial court must make certain inquiries to determine the reliability and probative value of the proffered evidence before evidence of specific instances of conduct may be admitted to prove habit. The court should consider (1) the similarity of the instances, (2) their number, and (3) their regularity; whether the specific instances are sufficient to establish habit is a question to be decided on a case-by-case basis, and the trial court's

rulings thereon will not be disturbed absent an abuse of discretion.

**Am Jur 2d, Evidence §§ 303, 316.**

**Habit or routine practice evidence under Uniform Evidence Rule 406. 64 ALR4th 567.**

**Admissibility of evidence of habit or routine practice under Rule 406, Federal Rules of Evidence. 53 ALR Fed 703.**

2. **Evidence and Witnesses § 110 (NCI4th)— negligent prescription of steroid—evidence of habit—admissible**

The trial court did not abuse its discretion in admitting the testimony of defendant's former patients in a medical malpractice action where plaintiff alleged that defendant negligently prescribed a steroid without discussing possible side effects; the evidence at trial showed that defendant prescribed the drug to twenty-six patients; and five of those former patients testified at trial that defendant had described the possible side effects of the drug. In light of the similarity, number, and regularity of these instances of conduct, we find no abuse of discretion by the trial court in admitting the testimony of defendant's former patients.

**Am Jur 2d, Evidence §§ 303, 316.**

**Habit or routine practice evidence under Uniform Evidence Rule 406. 64 ALR4th 567.**

**Admissibility of evidence of habit or routine practice under Rule 406, Federal Rules of Evidence. 53 ALR Fed 703.**

3. **Physicians, Surgeons, and Other Health Care Professionals § 148 (NCI4th)— negligent prescription of steroid—instructions—informed consent**

The trial court did not err in a medical malpractice action in which plaintiff alleged that defendant had prescribed a steroid without discussing possible side effects by instructing the jury, based on N.C.G.S. § 90-21.13(a)(3), that plaintiff would have to prove that a reasonable person under all the surrounding circumstances would not have given consent. This precise issue has been decided adversely to the plaintiff in *Dixon v. Peters,* 63 N.C. App. 592.

**Am Jur 2d, Physicians, Surgeons, and Other Healers § 366.**

CRAWFORD v. FAYEZ

[112 N.C. App. 328 (1993)]

Appeal by plaintiffs from judgment entered 28 December 1991 by Judge James M. Webb in Guilford County Superior Court. Heard in the Court of Appeals 29 April 1993.

Plaintiffs filed this action alleging in relevant part that defendant, Dr. Fayez, negligently recommended and prescribed a steroid drug, Medrol, to treat plaintiffs' infertility. According to the evidence, plaintiffs were referred to defendant in 1985 for evaluation and treatment of infertility. In early 1986, at a time when plaintiffs were not being treated by defendant, Lynn Crawford became pregnant, but the pregnancy ended with a miscarriage in March, 1986. At that time, defendant advised plaintiffs to continue their efforts to conceive a child but to return for further evaluation in six months if they were unsuccessful.

Plaintiffs returned to defendant in October 1986 at which time defendant tested the couple for sperm antibodies. On 9 January 1987, defendant informed plaintiffs that their sperm antibody levels were high and discussed with them the use of the steroid drug, Medrol, as a treatment. The substance of those discussions was a central issue at the trial of this case.

Plaintiffs testified that after defendant informed them of his recommended treatment, defendant left the room saying that his nurse would bring the Medrol prescription and inform plaintiffs of the drug's possible side effects. Plaintiffs further testified that the nurse discussed the possible short term side effects of Medrol including restlessness, sleeplessness, nausea and vomiting, and flushing or bloating of the face. Plaintiffs testified that neither defendant nor his nurse ever informed them of the possibility that Medrol could cause necrosis of the hip bones.

Conversely, defendant testified that he discussed with plaintiffs the various short term and long term side effects of Medrol. He further testified that he specifically informed plaintiffs of the possibility that the drug could cause avascular necrosis of the hip bones. Defendant testified that when prescribing Medrol it was his habit and routine practice to inform patients of the drug's possible side effects including bone necrosis. In addition to defendant's own testimony, five of his former patients testified, over plaintiffs' objection, that when they were prescribed Medrol by defendant, he informed them of the possibility of bone damage as a side effect. The trial court allowed this former patient testimony for the "limited purpose of showing routine practice of the defendant."

Plaintiffs took the medication as prescribed by defendant for the following six months. Plaintiffs returned to defendant's clinic in July 1987 at which time they were advised by defendant that there would be some residual effects from the medication and that they should wait six months before receiving further treatment. In December 1987, plaintiffs returned to see defendant. According to plaintiffs, it was during this visit that defendant first informed plaintiffs of the possibility of hip complications associated with the use of Medrol. Shortly thereafter, Mr. Crawford began to experience pain in his groin which interfered with his regular activities. In April 1988, he was diagnosed as having avascular necrosis of both hips. The avascular necrosis was determined to have been caused by the high dose steroids prescribed by defendant. Mr. Crawford subsequently underwent surgery on both hips.

Plaintiffs appeal from a jury verdict in favor of defendant.

*Law Offices of Grover C. McCain, Jr., by Grover C. McCain, Jr., and Phyllis Moore for plaintiff-appellants.*

*Bell, Davis & Pitt, P.A., by Joseph T. Carruthers and Charlot F. Wood, for defendant-appellee.*

MARTIN, Judge.

[1] Plaintiffs assign error to the admission of testimony by defendant's former patients and to the court's instructions to the jury. We find no error in the trial below.

At trial, five of defendant's former patients were permitted to testify, over plaintiffs' objection, that defendant had informed them of Medrol's possible side effects, including bone damage. The trial court admitted this testimony for the "limited purposes of showing routine practice of the defendant as it relates to information passed to these patients who were prescribed Medrol and any possible side effects specifically to include bone necrosis." At trial, and in their brief to this Court, plaintiffs argued that "habit" may not be proven by the testimony of a succession of witnesses who observed the behavior in question on a single occasion. Rather, plaintiffs contended, a person's habit must be proven by the testimony of a witness who has regularly observed the habitual behavior. During oral arguments in this Court, plaintiffs' counsel argued that even if habit is susceptible of proof by evidence of specific instances of the conduct in question, the testimony of defendant's five former

patients was inadmissible because there were insufficient instances of defendant's conduct to establish the existence of a habit.

To decide the issue, we must first determine whether the North Carolina Rules of Evidence permit proof of habit by specific instances of conduct. We begin our inquiry with a review of G.S. § 8C-1, Rule 406 and the cases concerning the rule. G.S. § 8C-1, Rule 406 provides as follows:

> Evidence of the habit of a person or of the routine practice of an organization whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

While Rule 406 is silent as to the methods by which the existence of a habit may be proven, our case law establishes that "habit" may be proven by testimony of a witness who is sufficiently familiar with the person's conduct to conclude that the conduct in question is habitual. In *State v. Palmer*, 334 N.C. 104, 431 S.E.2d 172 (1993), the Court found no error in the admission of testimony by the decedent's sister that the decedent had the habit of keeping money about her person. In *Barber v. Babcock & Wilcox Construction Co.*, 98 N.C. App. 203, 390 S.E.2d 341 (1990), *rev'd on other grounds*, 101 N.C. App. 564, 400 S.E.2d 735 (1991), our Court held that the corporate defendant's safety specialist was competent to testify as to the defendant's routine practice for removing asbestos insulation. In *State v. Simpson*, 299 N.C. 335, 261 S.E.2d 818 (1980), the Court ruled that a rest home employee could properly testify regarding her habit of keeping the business' screens and windows closed.

It is unclear, however, whether habit may be shown by a succession of witnesses who observed the relevant conduct on separate, single occasions. In his treatise on the law of evidence, Professor Brandis states, "[h]abit may be proved by the direct testimony of a witness who is acquainted with it, and also, it seems by evidence of specific acts sufficiently numerous and similar to justify the inference of a habit." 1 H. Brandis, Jr., *Brandis on North Carolina Evidence* § 95, at 433 (3d Ed. 1988). In support of the latter proposition, the author cites *Davis v. Lyon*, 91 N.C. 444 (1884). The opinion in *Davis*, however, does not disclose which method was utilized by the defendants to prove the plaintiff's usual practice, and provides little guidance in the instant case.

CRAWFORD v. FAYEZ

[112 N.C. App. 328 (1993)]

The parties point out that North Carolina's Rule 406 is identical to its federal counterpart. Fed. R. Evid. 406. Where our rule and the federal rule are similar, we may look to the federal rule's legislative history and federal court interpretations for guidance in determining our General Assembly's intent in adopting the rule. Commentary, N.C. Gen. Stat. § 8C-1, Rule 102; *State v. Ross*, 329 N.C. 108, 405 S.E.2d 158 (1991); *State v. Outlaw*, 94 N.C. App. 491, 380 S.E.2d 531 (1989). The Federal decisions appear to come down on both sides of the issue.

In *Weil v. Seltzer*, 873 F.2d 1453 (D.C. Cir. 1989), a case cited by plaintiffs, the court held that specific instances of conduct were inadmissible to prove habit. In *Weil*, the plaintiffs sought to introduce the testimony of the defendant physician's former patients as evidence of the physician's habit regarding his treatment of allergy patients. *Id.* at 1461. In ruling the evidence inadmissible, the court reasoned that because the former patients had never observed the doctor with other patients they could not demonstrate any knowledge of the doctor's alleged routine practice. *Id.* The court concluded that evidence concerning the physician's treatment of five former patients was not of the nonvolitional, habitual type contemplated by Rule 406, and that it more closely resembled inadmissible character evidence.

In *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494 (4th Cir. 1977), *cert. denied*, 434 U.S. 1020, 54 L.Ed.2d 768 (1978), the Fourth Circuit Court of Appeals considered the admissibility of specific instances of the defendant's conduct to prove that the defendant possessed the habit of "stone walling" during discovery proceedings. *Id.* at 511. The plaintiffs offered as evidence of the defendant's habit three prior cases in which default judgments had been entered against the defendant for failure to comply with discovery orders. Although the court ruled that the evidence was inadmissible, the court's ruling was based on the inadequacy of the sampling by which the plaintiff sought to prove the defendant's habit. *Id.* at 512. The court noted that "[i]t has been repeatedly stated that habit or pattern of conduct is never to be lightly established, and evidence of examples, for purpose of establishing such habit, is to be carefully scrutinized before admission." *Id.* at 511. However, the court also observed that, when sufficiently numerous and regular, examples of conduct are admissible to establish a pattern or habit.

In *Perrin v. Anderson*, 784 F.2d 1040 (10th Cir. 1986), the court ruled that evidence showing that the decedent had reacted violently toward police on several prior occasions was admissible under Rule 406 to establish that the decedent routinely reacted violently when dealing with uniformed police officers. The court specifically held that testimony concerning prior specific acts is admissible as proof of habit. *Id.* at 1046. In *Wetherill v. University of Chicago*, 570 F. Supp. 1124 (N.D.Ill. 1983), the plaintiffs sought to recover damages for injuries they sustained as the result of *in utero* exposure to DES. The plaintiffs' mothers were participants in a study conducted by the defendant. The plaintiffs claimed that their mothers had been given DES without their consent. To rebut the testimony of the plaintiffs' mothers, the court approved the admissibility of testimony by six other study participants that they had consented to the use of DES after full disclosure. The court ruled that this testimony was admissible as evidence of the "routine practice" of the defendant.

The legislative history of Rule 406 appears to support the admissibility of evidence of specific instances of conduct to prove a person's habit or routine practice. The preliminary draft of the Federal Rule of Evidence contained two subsections. Subsection (a) was identical to the present N.C.R. Evid. 406. Subsection (b) described the methods of proving habit and included proof "in the form of an opinion or by specific instances of conduct sufficient in number to warrant a finding [of habit.]" Wright & Graham, *Federal Practice and Procedure: Evidence* § 5271 at 9.

During House consideration of the proposed rule, subsection (b) was the subject of significant objection, much of which focused on the use of opinion evidence to prove habit. *Id.* Subsection (b) was ultimately deleted by the House subcommittee. *Id.* at 10. The House Judiciary Committee affirmed this deletion stating:

> The Committee deleted this subdivision believing that the method of proof of habit and routine practice should be left to the courts to deal with on a case-by-case basis. At the same time, the Committee does not intend that its action be construed as sanctioning a general authorization of opinion evidence in this area.

*Id.* n. 15 (citing House Judiciary Committee Report p. 5). The commentary provides insight that Congress anticipated that habit should be proven by evidence of specific instances of conduct and that

proof in the form of opinion testimony was disfavored. The Advisory Committee's Note to Rule 406 supports this interpretation. The Note states in part:

> The extent to which instances must be multiplied and consistency of behavior maintained in order to rise to the status of habit inevitably gives rise to difference of opinion. While adequacy of sampling and uniformity of response are key factors, precise standards for measuring their sufficiency for evidence purposes cannot be formulated. (Citation omitted.)

Clearly the Advisory Committee's Note contemplates proof of habit or routine practice by evidence of specific instances of conduct.

From our review of the foregoing authorities, we are persuaded that Rule 406 permits proof of habit by evidence of specific instances of conduct. Before evidence of specific instances of conduct may be admitted to prove habit, however, the trial court must make certain inquiries to determine the reliability and probative value of the proffered evidence.

As explained by the court in *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494 (4th Cir. 1977), the instances of specific conduct must be sufficiently numerous to warrant an inference of systematic conduct and to establish one's regular response to a repeated specific situation. The instances must be sufficiently regular or the circumstances sufficiently similar to outweigh the danger, if any, of prejudice and confusion. *Id.* In determining whether the instances are sufficiently numerous and regular, the key criteria are adequacy of sampling and uniformity of response, or the ratio of reactions to situations. *Id.*

Wright & Graham, *Federal Practice and Procedure: Evidence* § 5276, advocates that courts use a three part inquiry to determine the sufficiency of the specific instances proffered to prove habit. In considering the sufficiency of the evidence, the court should "consider (1) the similarity of the instances, (2) their number, and (3) their regularity." *Id.* at 61. By evaluating the proffered evidence in light of these criteria a trial court can adequately determine whether the specific instances of conduct rise to the level of habit contemplated in Rule 406. Whether the specific instances are sufficient to establish habit is a question to be decided on a case-by-case basis, and the trial court's rulings thereon will not be disturbed absent an abuse of discretion. N.C.R. Evid. 104 (1992).

CRAWFORD v. FAYEZ

[112 N.C. App. 328 (1993)]

**[2]**  Having determined that evidence of specific instances of conduct may be admissible as proof of habit under G.S. § 8C-1, Rule 406, we must now decide whether the testimony admitted in the present case was sufficient to establish that defendant had the habit of warning his patients about the side effects of Medrol.

The evidence at trial showed that defendant prescribed Medrol to twenty-six patients. Of these twenty-six patients, five former patients testified at trial. Defendant treated the five former patients between 1985 and 1987. Plaintiffs began treatment with Medrol in January 1987. Each of the former patients, like plaintiffs, was diagnosed as having high levels of sperm antibodies. The former patients testified that defendant discussed his diagnosis with them and that he recommended that their condition be treated with Medrol. All of the former patients who testified stated that defendant, when discussing Medrol, described the possible side effects of the drug, and specifically informed them that the possible side effects included weakening of the bones and joints and increased brittleness of the bones. In light of the similarity, number, and regularity of these instances of conduct, we find no abuse of discretion by the trial court in admitting the testimony of defendant's former patients. This assignment of error is overruled.

**[3]**  Plaintiffs next assign error to a portion of the trial court's jury charge. The trial court's charge was based on G.S. § 90-21.13(a)(3) (1990), which provides that no recovery may be had in an action alleging a lack of informed consent if "a reasonable person, under all the surrounding circumstances, would have undergone such treatment . . . ." The court instructed the jury that before plaintiffs would be entitled to recover damages for their injuries they would have to prove, in part, that defendant did not advise plaintiffs of the possibility of bone necrosis and that "*a reasonable person under all the surrounding circumstances would not have given consent.*" Plaintiffs contend that this charge, by imposing an objective standard for determining proximate cause, denied plaintiffs the right to equal protection under the state and federal constitutions. We disagree. This precise issue has been previously decided adversely to the plaintiff in *Dixon v. Peters*, 63 N.C. App. 592, 306 S.E.2d 477 (1983). In *Dixon*, we held that there was a rational basis for the promulgation of G.S. § 90-21.13(a)(3) and that therefore it was not violative of the plaintiff's right to equal protection. *Dixon*, at 602, 306 S.E.2d at 477. The trial court's instructions correctly applied the statute. This assignment of error is overruled.

No error.

Judges EAGLES and JOHN concur.