STATE OF NORTH CAROLINA v. ROBERT SAMUEL THOMAS, Defendant

No. COA97-171

(Filed 16 September 1997)

## Automobiles and Other Vehicles § 834 (NCI4th)— DWI arrest—probable cause

In a prosecution for habitual impaired driving and driving while license revoked, the trial court did not err in concluding that there was probable cause to arrest defendant where the arresting officer was notified of defendant's intoxication by an off-duty policeman and the arresting officer observed defendant's disorderly appearance, red glassy eyes, strong odor of alcohol, backing up when he saw the arresting officer, and inability to produce a driver's license.

Appeal by defendant from judgment entered 2 August 1996 by Judge James C. Spencer, Jr. in Alamance County Superior Court. Heard in the Court of Appeals 11 August 1997.

*Attorney General Michael F. Easley, by Assistant Attorney General Jonathan P. Babb, for the State.*

*Hemric, Lambeth & Champion, P.A., by Ricky W. Champion, for defendant-appellant.*

WYNN, Judge.

A grand jury indicted defendant on one count of habitual impaired driving and one count of driving while license revoked. On 31 July 1996, a jury convicted defendant of driving while impaired. Thereafter, the trial court sentenced defendant, who had a prior record level of IV, to a minimum term of eighteen months imprisonment and a maximum term of twenty-two months imprisonment.

At trial, the State's evidence tended to show that on 14 May 1995, Charles Ward while in an off-duty status as a police officer with the

Burlington City Police Department, worked as a security officer at the Alamance County Hospital. That evening, an emergency room nurse told him that a patient on medication which would impair her ability to operate a motor vehicle was leaving the hospital. She identified the patient for Officer Ward. Officer Ward left the hospital and found the woman in the parking area as she opened the driver's side door to a small, blue hatch back vehicle. When she sat down in the car, Officer Ward noticed defendant who was "slumbered down in the [passenger] seat" with his eyes closed. After the woman acknowledged that she was on medication which would impair her ability to drive, defendant woke up and started speaking to her. Officer Ward detected a strong odor of alcohol coming from his breath, and noticed that defendant's eyes were very red and bloodshot. In addition, his physical appearance was disorderly. Officer Ward believed defendant's mental and/or physical faculties were impaired by the consumption of alcohol.

Officer Ward told the woman she should not drive, and that defendant "definitely [didn't] need to drive." The woman told him that they were going to call someone to pick them up, so Officer Ward returned to the hospital. As he did, he radioed Officer John Bigelow and told him that "there was a small blue hatch back vehicle in the parking lot and . . . the occupants ha[ve] been instructed not to drive." Within minutes, Officer Ward returned to the parking area and saw the car backing up and leaving the parking space. He could not see who was driving the vehicle, and immediately radioed Officer Bigelow. Officer Bigelow, who had been parked across the street, pulled over to the parking area. When defendant saw him, he started backing the car up, but did not back up in a straight line or follow the curve of the driveway. In fact, had he continued, he would have backed into the curb.

Officer Bigelow activated his blue lights and defendant stopped the car. When Officer Bigelow asked defendant for his license and registration, defendant asked him why he stopped him. Officer Bigelow, who noticed a strong odor of alcohol about defendant, explained that defendant had been advised not to drive, and asked defendant to step out of the car. Defendant could not produce a driver's license or registration. Moreover, when defendant stepped out of the car, Officer Bigelow noticed that his eyes were red and glassy, and that his appearance was disorderly.

Based on his observations of defendant, the fact that defendant backed up upon seeing him, and defendant's inability to produce

STATE v. THOMAS

[127 N.C. App. 431 (1997)]

either a driver's license or registration, Officer Bigelow arrested him. Officer Bigelow believed that both defendant's mental and physical faculties were impaired. After his arrest, defendant was unable to perform the "walk and turn" test, and did not perform well when asked to touch his nose. Moreover, defendant, whose speech was mumbled and slurred, blew a .23 on the Intoxilyzer 5000 less than an hour after his arrest.

On appeal, defendant contends only that the trial court erred by denying his motion to suppress. Specifically, he argues that Officer Bigelow did not have sufficient evidence to establish probable cause for his warrantless arrest. In making this argument, defendant does not challenge the trial court's findings of fact as lacking support in the record. Instead, he appears to argue that the trial court erred by concluding that the evidence establishes probable cause. We disagree.

Probable cause for an arrest is " 'a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty.' " *State v. Harris*, 279 N.C. 307, 311, 182 S.E.2d 364, 367 (1971) (quoting 5 Am. Jur. 2d *Arrests* § 44 (1962)). To justify a warrantless arrest, it is not necessary to show that the offense was actually committed, only that the officer had a reasonable ground to believe it was committed. *State v. Crawford*, 125 N.C. App. 279, 282, 480 S.E.2d 422, 424 (1997). Whether these grounds exist is determined by the practical and factual considerations of everyday life on which reasonable and prudent people act. *Id.*

The evidence in this case is clearly sufficient to establish probable cause for defendant's warrantless arrest. While, as defendant argues, many of the factors identified by Officer Bigelow would, if viewed singly, be insufficient to establish probable cause, they are clearly sufficient when considered as a whole. For example, Officer Bigelow testified that when he received Officer Ward's call that the occupants of a small blue hatch back vehicle had been instructed not to drive, he understood this to mean that Officer Ward believed they were impaired. It is well settled that "information given by one officer to another is reasonably reliable information to provide probable cause." *State v. Matthews*, 40 N.C. App. 41, 44, 251 S.E.2d 897, 900 (1979); *see also State v. Hart*, 64 N.C. App. 699, 702, 308 S.E.2d 474, 476 (1983).

In addition to the information received from Officer Ward, Officer Bigelow's own observations of defendant, set forth fully above, provide sufficient evidence of probable cause to justify defendant's warrantless arrest. Based on his observations of defendant—including his disorderly appearance, red glassy eyes, the strong odor of alcohol, backing up when he saw Officer Bigelow, and inability to produce either a driver's license or registration—Officer Bigelow arrested defendant. Taken as a whole, this evidence is clearly sufficient to establish probable cause, and the trial court properly denied defendant's motion to suppress. *See, e.g., State v. Adkerson*, 90 N.C. App. 333, 368 S.E.2d 434 (1988) (finding probable cause where trooper arrested defendant for driving while impaired based on his driving, appearance and behavior); *State v. Rogers*, 124 N.C. App. 364, 477 S.E.2d 221 (1996) (finding probable cause where trooper had opportunity to observe defendant, spoke with defendant and smelled a strong odor of alcohol on him, and defendant had a blood alcohol concentration of .13), *disc. review denied*, 345 N.C. 352, 483 S.E.2d 187 (1997).

Finally, although we believe Officer Bigelow had sufficient evidence of probable cause to arrest defendant for driving while impaired, we note that defendant's inability to produce his driver's license gave Officer Bigelow an additional basis on which to arrest him. *See State v. Johnston*, 115 N.C. App. 711, 714-15, 446 S.E.2d 135, 138 (1994).

No error.

Judges JOHN and SMITH concur.