STATE OF NORTH CAROLINA v. PETER GEORGE TAPPE, Defendant

No. COA99-168

(Filed 18 July 2000)

**1. Evidence— motion to suppress—driving while impaired—officer's observations**

The trial court did not err in a driving while impaired case by denying defendant's motion to suppress all evidence obtained subsequent to defendant's arrest because the police officer had sufficient probable cause to arrest defendant based on the officer's observations of defendant's vehicle crossing the center line; defendant's glassy, watery eyes; and a strong odor of alcohol on defendant's breath.

**2. Motor Vehicles— driving while impaired—breathalyzer test results—customary and required procedures**

The trial court did not err in a driving while impaired case by admitting the results of defendant's breathalyzer test, even though pertinent documents were destroyed in accordance with standard procedures during the ten-year period between defendant's arrest and the hearing date, because: (1) the qualified individual who administered the test related the customary and required procedures he and other chemical analysts followed in administering breathalyzer tests, including performance of a simulator test prior to obtaining an actual breath sample, to show the test was administered in conformity with the habit or routine practice, N.C.G.S. § 8C-1, Rule 406; (2) the individual who administered the test related his personal experience in operating the Breathalyzer 900; and (3) the individual's testimony comprised a proper and acceptable manner of establishing compliance with the requirements of N.C.G.S. § 20-139.1(b) for a valid chemical analysis.

**3. Motor Vehicles— driving while impaired—blood test—right to assistance**

Defendant's statutory right under N.C.G.S. § 20-16.2(a)(5) and N.C.G.S. § 20-139.1(d) to assistance in obtaining a blood test after his submission to a chemical analysis was not violated in a driving while impaired case, because: (1) an officer's duty goes no further than allowing a defendant access to a telephone and allowing medical personnel access to a driver held in custody; and (2) defendant acknowledged that he was afforded an opportunity to telephone both his girlfriend and his attorney in Virginia, which reveals that defendant could have telephoned a medical expert or hospital for the purposes of conducting a blood test.

Appeal by defendant from judgment entered 15 September 1998 by Judge J. Richard Parker in Camden County Superior Court. Heard in the Court of Appeals 6 January 2000.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Isaac T. Avery, III, for the State.*

*D. Keith Teague, P.A., by Danny Glover, Jr., for defendant-appellant.*

STATE v. TAPPE

[139 N.C. App. 33 (2000)]

JOHN, Judge.

Defendant appeals judgment entered upon conviction by a jury of driving while impaired. Defendant contends the trial court erred by denying his motion to suppress results of a breathalyzer test. We conclude the trial court did not err.

The State's evidence at trial tended to show the following: On 21 August 1988, North Carolina Highway Patrol (the Patrol) Sergeant Roscoe Spencer (Spencer), while operating his Patrol automobile, passed a vehicle traveling in the opposite direction and thereupon "observed [it] . . . cross[] the center line." Spencer immediately pursued and stopped the vehicle, operated by defendant. Upon approaching, Spencer noticed a "strong odor of alcohol about [defendant's] breath [and that] his eyes were glassy and watery." Spencer asked defendant if he had been drinking. The latter acknowledged he had consumed one-half the contents of an open beer container located in his vehicle, but denied having done so while driving. He also remarked that he was of German origin and that "in Germany they drank beer for water."

Based upon his observations of and conversation with defendant, Spencer arrested the latter on a charge of driving while impaired. Spencer instructed one of the two passengers in defendant's vehicle to drive it to the Sheriff's Department in Camden while defendant was being transported in the Patrol automobile.

Upon arriving at the Sheriff's Department, Spencer began filling out an Alcohol Influence Report (A.I.R.) and conducted certain sobriety tests. Spencer's notes on the tests had been destroyed approximately five years following the date of defendant's arrest, and Spencer was unable to recall his characterization of defendant's performance on the tests.

Following the sobriety tests, Patrol Sergeant Raymond Potts (Potts), a certified chemical analyst, administered a breathalyzer test to defendant, which revealed a 0.34 blood alcohol concentration. Thereafter, both Spencer and Potts accompanied defendant to the magistrate's office, where bond was set at $250.00 and defendant was ordered detained for sixteen (16) hours unless released into the custody of a responsible adult. Defendant contacted both his girlfriend and his attorney in Virginia, defendant's home state, and was released upon the latter's arrival approximately two and one-half hours later.

Defendant returned to Virginia and did not address the DWI charge until 1998, when he attempted to renew his Virginia driver's license. During the ten year period following defendant's arrest, most documents pertaining to his case were purged and destroyed in accordance with standard Patrol procedures. The sole documents remaining at the time of trial were Spencer's affidavit (Spencer's affidavit) filled out as charging officer the afternoon of defendant's arrest and the original "Breathalyzer Test Record" signed by Potts, indicating a 0.34 blood alcohol concentration.

In his testimony, defendant related that he had conveyed to Spencer his lack of familiarity with the area and explained that he had crossed the center line in order to see a real estate agent whom he was following to view property in the area. Further, upon learning of the 0.34 alcohol concentration reading, he had requested a blood test several times because he had consumed only one-half to three-quarters of the beer from the can in his vehicle. Defendant testified Spencer responded he had "enough evidence . . . [and] need[ed] no blood test," and that he was never given access to a telephone or an opportunity to contact a hospital or doctor. Defendant recalled performing sobriety tests at the Sheriff's Department.

**[1]** Defendant first contends the trial court erred in denying his motion to suppress all evidence obtained subsequent to his arrest. Defendant asserts Spencer lacked probable cause for the arrest. We disagree.

Probable cause for an arrest is

a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty.

*State v. Harris*, 279 N.C. 307, 311, 182 S.E.2d 364, 367 (1971) (citation omitted). To justify a warrantless arrest, it is

not necessary to show that the offense was actually committed, only that the officer had a reasonable ground to believe it was committed.

*State v. Thomas*, 127 N.C. App. 431, 433, 492 S.E.2d 41, 42 (1997). The existence of such grounds is determined by the "practical and factual considerations of everyday life on which reasonable and prudent people act." *State v. Crawford*, 125 N.C. App. 279, 281, 480 S.E.2d 422, 424 (1997). If there is no probable cause to arrest, evidence obtained as a

result of that arrest and any evidence resulting from the defendant's having been placed in custody, should be suppressed. *State v. Pope*, 333 N.C. 106, 113-14, 423 S.E.2d 740, 744 (1992).

At the *voir dire* hearing conducted upon defendant's motion to suppress, Spencer testified he met a vehicle traveling in the opposite direction on 21 August 1988 and "observed [it] . . . cross[] the center line" after passing Spencer's Patrol automobile. Spencer related that upon stopping the vehicle, he "could smell alcohol that was inside" it and noted that defendant, the driver, "had a strong odor of alcohol about his breath" when he talked. As defendant accompanied Spencer to the Patrol automobile, Spencer observed "a strong odor of alcohol about [defendant's] breath, [and] his eyes were watery and glassy."

Based upon the foregoing observations and his conversation with defendant, Spencer formed the opinion that defendant was "impaired" and placed him under arrest. Spencer indicated he had completed a citation at the scene which included notes taken prior to and after defendant's arrest, but explained the citation was not introduced at trial because it had been purged five years following institution of the charge against defendant. However, Spencer's affidavit was used to refresh his recollection of defendant's behavior and appearance on 21 August 1988.

During the hearing, defendant indicated that a real estate agent had offered him a beer on the date in question prior to defendant's viewing property in the Camden County area. Defendant maintained:

> I got me this Milwaukee beer and I didn't like it, it was terrible. So I drink [sic] only a little bit and put it there in the car. I did not even drink it in the car. What I drink [sic] out of this beer was on his property there.

Defendant claimed he drank one half the can of beer and left the remaining portion in his vehicle. After being stopped by Spencer, defendant explained he had crossed the center line because he was attempting to follow the real estate agent traveling in front of him.

Following the hearing, the trial court rendered the following pertinent findings of fact:

> 2. That [Defendant] was observed by Trooper Roscoe Spencer . . . crossing the center line of the highway and that he was thereafter stopped. . . .

3. It was observed that the Defendant had a strong odor of alcohol on his breath and had glassy, watery eyes.

4. Upon making this observation, Trooper Spencer formed an opinion that the Defendant was, in his opinion, under the influence of an impairing substance and he was arrested for the same.

Based upon these findings, the court concluded "Spencer had sufficient probable cause to arrest the defendant for driving while impaired."

It is well established that

[t]he scope of review on appeal of a defendant's motion to suppress is strictly limited to determining whether the trial court's findings are supported by competent evidence, in which case they are binding on appeal, and in turn, whether those findings support the trial court's conclusions of law.

*State v. Cabe*, 136 N.C. App. 510, 512, 524 S.E.2d 828, 830, *disc. review denied*, 351 N.C. 475, S.E.2d (2000) (citations omitted).

In the case *sub judice*, the trial court's findings are supported by evidence adduced at the suppression hearing, are thereby conclusive on appeal, and fully warrant the trial court's conclusion of law "that Trooper Spencer had sufficient probable cause to arrest the Defendant for driving while impaired." Spencer's observations of defendant, set forth fully above and including his observation of defendant's vehicle crossing the center line, defendant's glassy, watery eyes, and the strong odor of alcohol on defendant's breath, provided sufficient evidence of probable cause to justify the warrantless arrest of defendant. *See, e.g., State v. Rogers*, 124 N.C. App. 364, 369-70, 477 S.E.2d 221, 224 (1996), *disc. review denied*, 345 N.C. 352, 483 S.E.2d 187 (1997) (probable cause for driving while impaired arrest based upon officer's opportunity to observe defendant, to speak with him and officer's noting of strong odor of alcohol on defendant), and *State v. Adkerson*, 90 N.C. App. 333, 336-37, 368 S.E.2d 434, 436 (1988) (probable cause for driving while impaired arrest based upon trooper's observations of defendant's driving, appearance and behavior). The trial court did not err in denying defendant's motion to suppress.

[2] Defendant next challenges admission into evidence of the results of defendant's breathalyzer test. Defendant contends N.C.G.S. § 20-139.1(b) (1984, amended 1997) was contravened at trial in that

the State failed to prove a simulator test had been satisfactorily performed prior to administration of defendant's actual test. Again, we disagree.

The version of G.S. § 20-139.1(b) in effect at the time of defendant's 1988 arrest contained two prerequisites for a valid chemical analysis:

> First, it require[d] that such analysis shall have been performed according to methods approved by the [Commission for Health Services]. Second, it require[d] that such analysis shall have been made by an individual possessing a valid permit issued by the State Board of Health for this purpose.

*State v. Powell*, 10 N.C. App. 726, 728, 179 S.E.2d 785, 786, *aff'd*, 279 N.C. 608, 184 S.E.2d 243 (1971). Methods approved by the Commission for Health Services included performance by the chemical analyst, as part of the testing process, of a simulator test on the breathalyzer machine prior to testing a defendant's breath sample. *State v. Shuping*, 312 N.C. 421, 427, 323 S.E.2d 350, 354 (1984). Such testing constituted a "control test" to "verify the accuracy of the machine." *Id.*

Defendant does not argue that Potts, who administered the test and testified as to the results, was not shown to possess the qualifications required by G.S. § 20-139.1(b). Rather, the thrust of defendant's argument is that it was incumbent upon the State under G.S. § 20-139.1(b) to introduce evidence of simulator test results, and that without such evidence the State failed to prove defendant's breathalyzer test was administered in accordance with "approved methods."

In its order denying defendant's motion to suppress, the trial court found as fact that Spencer made "efforts to obtain copies" of his A.I.R. and the citation copy containing Spencer's personal notes concerning defendant's case, but that these documents had "been discarded over the course of time." As noted above, standard operating procedure of the Patrol caused destruction of such documents upon expiration of approximately five (5) years. *See State v. Jones*, 106 N.C. App. 214, 217-18, 415 S.E.2d 774, 776 (1992) (defendant's federal due process rights not violated by police officer's disposal of control and test ampules used in performing breathalyzer test in accordance with standard procedures where defendant did not challenge such procedures or present evidence to the contrary). More importantly,

defendant presented no evidence to indicate the simulator results or other destroyed documents would have been exculpatory. *See id.* (State's failure to take and preserve an additional breath sample or produce the control and test ampules for defendant's examination did not violate state and federal due process).

Significantly, this Court held in *State v. Powell,* 10 N.C. App. at 728, 179 S.E.2d at 786, that compliance with the two G.S. § 20-139.1(b) requirements may be shown in "any proper and acceptable manner." *Id.* In the instant case, due to the destruction of pertinent documents in accordance with standard procedures during the ten year period between defendant's arrest and the hearing date, Spencer and Potts, without the benefit of their documented notes, were unable to recall specific details surrounding defendant's breathalyzer or simulator test. Nonetheless, Potts related the customary and required procedures he and other chemical analysts followed in administering breathalyzer tests, including performance of a simulator test prior to obtaining an actual breath sample.

N.C.G.S. § 8C-1, Rule 406 (1983) (Rule 406), provides that

[e]vidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

*Id.* "Habit" may be proven by testimony of a witness who is sufficiently familiar with a person's conduct to conclude that the conduct in question is habitual. *Crawford v. Fayez,* 112 N.C. App. 328, 332, 435 S.E.2d 545, 548 (1993), *disc. review denied,* 335 N.C. 553, 441 S.E.2d 113 (1994) ("habit may be proven by testimony of a witness who is sufficiently familiar with the person's conduct to conclude that the conduct in question is habitual," and specific instances of conduct may be used to prove habit if such evidence is found to be reliable and probative; testimony of five former patients thus sufficient to establish doctor had habit of warning his patients about side effects of infertility drug); *see State v. Simpson,* 299 N.C. 335, 346, 261 S.E.2d 818, 825 (1980) (rest home employee properly testified regarding her habit of keeping screens and windows of the business closed).

Potts, specially trained to operate the Breathalyzer model 900 machine used to record defendant's breath sample, testified as to the customary procedures followed in administering tests with that

model. He indicated the methods approved by the Commission of Health Services for administration of such a test were set forth in an operational checklist routinely followed by all chemist analysts, including himself. Although the original operational checklist used in defendant's case had been destroyed, Potts referred to an identical form in effect at the time of defendant's test to relate the procedures he followed in August of 1988.

Potts stated the 1988 checklist had likewise been approved by the Commission of Health Services, and that, in completing the form, he had entered defendant's name, the date and time of observation, the "instrument number, the simulator number and ampule control number." Potts then proceeded to describe in detail the numerous procedures, including performance of a simulator test, conducted to assure the breathalyzer instrument was properly calibrated.

Finally, Potts related his personal experience in operating the Breathalyzer 900:

Counsel: And how many times would you say you had used the Breathalyzer by August 21, 1988?

Sergeant Potts: Probably a thousand.

Potts thus testified as to the customary required procedures routinely utilized by himself and other chemical analysts in administering a Breathalyzer 900 test, including performance of a simulator test. Potts' testimony provided competent evidence under G.S. § 8C-1, Rule 406, that the breathalyzer test administered to defendant "was in conformity with the habit or routine practice," *id.*, of Potts and other chemical analysts administering Breathalyzer 900 tests. *See Barber v. Babcock & Wilcox Construction Co.*, 98 N.C. App. 203, 207, 390 S.E.2d 341, 343 (1990), *rev'd on other grounds*, 101 N.C. App. 564, 400 S.E.2d 735 (1991) (corporate defendant's safety specialist competent to testify as to defendant's routine practice for removing asbestos insulation, notwithstanding specialist was not actually present at jobsite where such removal occurred), and *Crawford*, 112 N.C. App. at 332, 435 S.E.2d at 548; *see generally Long v. Harris*, 137 N.C. App. —, —, 528 S.E.2d 633, 635 (2000) ("whether . . . proffered evidence is sufficient to establish habit is a question to be decided on a case-by-case basis, and the trial court's rulings thereon will not be disturbed absent an abuse of discretion").

Under the circumstances of the case *sub judice*, Potts' testimony comprised a "proper and acceptable manner" of establishing compli-

ance with requirements of G.S. § 20-139.1(b), *see Powell*, 10 N.C. App. at 728, 179 S.E.2d at 786 (State may prove compliance with G.S. § 20-139.1(b) in "any proper and acceptable manner"), and absent evidence to the contrary, provided the basis for a reasonable inference by the trier of fact that he conducted a valid simulator test prior to administering defendant's test, *see State v. Doggett*, 41 N.C. App. 304, 305-06, 254 S.E.2d 793, 794 (1979) (where officer testified he was a certified Breathalyzer operator, and "testified in detail about simulator test he ran before testing defendant . . . the Breathalyzer test results were admissible notwithstanding fact there was no evidence that officer held such a permit on the day of the offense").

We also note parenthetically recognition by our Supreme Court in *State v. Shuping*, 312 N.C. at 431, 323 S.E.2d at 355-56, that "[c]ourts in several states have reviewed the accuracy and reliability of breath-testing devices, including the Breathalyzer Models 900 and 900A, and have determined them to be reliable scientific instruments." *Id.; see State v. Smith*, 312 N.C. 361, 372, 323 S.E.2d 316, 322 (1984) ("the science of breath analysis for alcohol concentration has become increasingly reliable, increasingly less dependent on human skill of operation, and increasingly accepted as a means for measuring blood alcohol concentration").

[3] In his final argument, defendant contends his statutory right to assistance in obtaining a blood test was violated. Defendant asserts he requested a blood test several times, but was not accorded assistance in obtaining one.

N.C.G.S. § 20-16.2(a)(5) (1984, amended 1995), in effect at the time of defendant's arrest, provided that an individual charged with driving while impaired could obtain a

> qualified person of his own choosing to administer a chemical test or tests in addition to any test administered at the direction of the charging officer.

*Id.* Additionally, any officer with a person in his charge who submitted to a chemical analysis was mandated to

> assist the person in contacting someone to administer the additional testing . . . and [to] allow access to the person for that purpose.

N.C.G.S. § 20-139.1(d) (1984, amended 1997).

In *State v. Bumgarner*, 97 N.C. App. 567, 573, 389 S.E.2d 425, 429, *disc. review denied*, 326 N.C. 599, 393 S.E.2d 873 (1990), this Court further clarified the responsibilities of a law enforcement officer with respect to a blood test as follows:

> officers may not hinder a driver from obtaining an independent sobriety test, but their constitutional duties . . . go no further than allowing a [d]efendant access to a telephone and allowing medical personnel access to a driver held in custody.

During the *voir dire* hearing, defendant testified he requested a blood test several times, but was never given access to a telephone, did not have an opportunity to contact a hospital or doctor, and was told by Spencer that they "have enough evidence, [and] need[ed] no blood test." However, defendant later acknowledged he was afforded an opportunity to telephone both his girlfriend and his attorney in Virginia.

Spencer and Potts related they had no recollection of defendant's having requested a blood test, but, according to Spencer,

> if [defendant] had requested us to—to—for a blood test, we would have given him access to several telephones that were located at the Sheriff's Office within walking distance of the Breathalyzer.

Spencer further indicated that upon receipt of a blood test request, it was Patrol policy to

> give them a telephone book and a telephone to make a phone call and give them directions, telephone numbers, to an appropriate facility.

In its order denying defendant's motion to suppress, the trial court concluded as a matter of law that:

> Defendant was given an opportunity to use the telephone to make certain calls to his girlfriend and attorney, Adderley, and could have called a medical expert or hospital for the purposes of conducting a blood test.

The court, as the sole judge of the credibility of the witnesses, thus chose to accept the testimony of Spencer and Potts to the effect that defendant would have been provided access to a telephone had he requested a blood test, and to reject defendant's conflicting testimony that he was denied the opportunity to secure a blood test

although later permitted to telephone both his girlfriend and his attorney. *See State v. Jean*, 310 N.C. 157, 183, 311 S.E.2d 266, 281 (1984) (trial judge "must assess the credibility of witnesses in rendering his judgment as to the admissibility of the evidence which is the subject of the *voir dire*"), and *State v. Bass*, 280 N.C. 435, 448, 186 S.E.2d 384, 393 (1972) (on *voir dire*, "credibility [of witness] was subject to impeachment before the judge in the same manner as it would have been had he taken the stand and testified before the jury"); *see generally Rosales-Lopez v. U.S.*, 451 U.S. 182, 188, 68 L. Ed. 2d 22, 28 (1981) (during *voir dire* trial judges "must reach conclusions as to . . . credibility by relying on their own evaluations of demeanor evidence and of responses to questions," and "an appellate court [cannot] easily second-guess the conclusions of . . . decision maker who heard and observed the witnesses"); *see also State v. Eubanks*, 283 N.C. 556, 563, 196 S.E.2d 706, 711 (1973) ("[d]efendant's testimony that he had consumed only two bottles of beer suggests perjury rather than sobriety").

No error.

Judges McGEE and HUNTER concur.