STATE OF NORTH CAROLINA
v.
CHRISTOPHER DARRICK PEELER, Defendant.
No. COA08-1450
Court of Appeals of North Carolina.
Filed June 16, 2009
This case not for publication
Attorney General Roy A. Cooper, III, by Assistant Attorney General Jess D. Mekeel, for the State.
Don Willey for defendant-appellant.
JACKSON, Judge.
Christopher Darrick Peeler ("defendant") appeals from a consolidated judgment for habitual impaired driving and driving while license revoked. He contends the trial court erred by denying his motion to suppress the results of a chemical analysis of his blood. For the reasons stated below, we hold no error.
At the voir dire hearing conducted upon defendant's motion to suppress, Officer David J. Williams, II ("Officer Williams") testified that he was dispatched to investigate a motor vehicle crash on 27 October 2007. Upon his arrival at the scene, Officer Williams observed defendant leaning against a vehicle that was approximately fifteen feet off of the roadway to the left. Defendant began limping toward Officer Williams while holding the small of his back and complaining of injuries to his head, neck, back, and left leg. He admitted that he had been driving the vehicle. While speaking with defendant after summoning Guilford County EMS, Officer Williams noticed that defendant's breath had a fairly strong odor of alcohol, that his speech was slurred, and that he had difficulty responding to questions. On the basis of his observations of defendant, Officer Williams formed the opinion that defendant had consumed a sufficient quantity of alcohol to become appreciably impaired. Because of defendant's injuries, Officer Williams did not ask defendant to perform field sobriety tests before EMS transported him to the hospital.
As he was conducting his accident investigation, Officer Williams ran defendant's DMV history and discovered that defendant's license currently was suspended for a DWI offense. After processing the accident scene for approximately an hour, Officer Williams and Investigator Christa Leonard ("Investigator Leonard") traveled to the hospital where defendant had been taken. Officer Williams then cited defendant for driving while impaired, driving while license revoked, and failing to reduce speed. Investigator Leonard, a certified chemical analyst, proceeded to read defendant his rights concerning chemical analysis of his breath or blood. Defendant indicated that he understood those rights, but he refused to sign the rights form.
Officer Williams testified that he asked defendant to submit to having his blood drawn by a phlebotomist for chemical analysis, and defendant agreed. When asked during cross-examination if here called defendant's indicating that he did not want to take the test, Officer Williams stated, "No, sir . . . ." Investigator Leonard also testified that Officer Williams asked defendant to submit to having his blood drawn and that defendant responded in the affirmative. The officers immediately called for a phlebotomist, who then drew defendant's blood and returned the kit to Investigator Leonard. After packaging and sealing the kit, Investigator Leonard turned it in to the evidence room. Officer Williams testified that the results received from the State Bureau of Investigation indicated that defendant had a blood-alcohol level of 0.14. Defendant was subsequently indicted on 3 March 2008 for habitual impaired driving.
Defendant testified that a "lady cop" asked him to take a blood test while he was in the hospital. When he asked why, she read him his rights and said that he was driving drunk. Defendant testified that he told the officer that he did not want to take the blood test because he did not like to "be shot by needles." When the officer told defendant that he would be taken downtown if he did not take the blood test, defendant replied that he "[did not] want to go downtown so . . ., you do what you got to do . . . ."
After the blood was drawn, defendant said the officer turned around and asked him to sign a paper. He told her that he knew his "rights about signing things" and that he did not "have to sign this paper." Defendant stated that he had consumed one beer and two shot glasses of vodka after work and that he had taken some pain medication prior to the accident. He denied sustaining any sort of head injury in the accident.
After hearing argument from counsel for the State and defendant, the trial court made the following findings of fact in its oral order:
[20] That Investigator Leonard advised the defendant of his rights with respect to a chemical analysis of blood to determine his alcohol concentration or the presence of impairing substance . . . .
. . . .
[22] That Officer Williams asked the defendant to submit to a blood analysis and the defendant consented.
[23] That the defendant's blood was drawn by [a] qualified person.
[24] That defendant was given the opportunity to sign [the chemical analysis rights form] but refused to sign.
. . . .
[25] That a blood sample was taken from the defendant at 11:50 p.m. on the 27th day of October, 2007, by K-a-m-i-a-f-a-u-l-k-s. Previously stated person qualified to withdraw blood sample pursuant to . . . [North Carolina General Statutes, section] 20-130.1.
[26] That the blood sample was analyzed and the test results were .14.
. . . .
[30] That the defendant did not have any head injuries from the accident.
Based upon the foregoing findings of fact, the trial court concluded:
[1] [T]hat none of the defendant's constitutional rights, either Federal or State, were violated.
[2] That none of the defendant's statutory rights either Federal or State were violated.
. . . .
[3] That the defendant consented to having a qualified person withdraw a blood sample for chemical analysis.
It is therefore adjudged and decreed that the defendant's Motion to Suppress results of blood analysis filed June the 4th, 2008 being hereby denied.
The trial court, therefore, denied defendant's motion to suppress the results of the blood analysis.
As a result of his indictment on 3 March 2008 for habitual impaired driving, defendant stipulated outside of the jury's presence to three prior DWI convictions and to having notice that his license was revoked on the date in question.
At trial, both the State and defendant presented their evidence. The trial court then instructed the jury on charges of impaired driving and driving while license revoked, and the jury found defendant guilty of both charges. The trial court entered judgment on the offense of habitual impaired driving upon defendant's stipulation to three prior DWI convictions. The trial court consolidated the two convictions for judgment and sentenced defendant to a term of eighteen to twenty-two months imprisonment. From the trial court's judgment, defendant appeals.
In his sole argument on appeal, defendant contends the trial court erred by denying his motion to suppress the results of the blood analysis. He argues that his "unequivocal refusal to sign the rights form" is sufficient evidence that he did willfully refuse to take the test, and that "[t]his refusal taken in the context of his having just been transported to the emergency room following a motor vehicle accident is sufficient to conclude that his subsequently allowing his blood to be drawn was coerced or permitted under duress." We disagree.
"[T]he scope of review on appeal of a defendant's motion to suppress is strictly limited to determining whether the trial court's findings are supported by competent evidence, in which case they are binding on appeal, and in turn, whether those findings support the trial court's conclusions of law." State v. Tappe, 139 N.C. App. 33, 38, 533 S.E.2d 262, 264-65 (2000). Even if the evidence before the trial court is conflicting, its findings of fact are conclusive on appeal if those findings are supported by competent evidence. State v. Haislip, 362 N.C. 499, 500, 666 S.E.2d 757, 758 (2008). The trial court's conclusions of law are reviewable de novo on appeal. Id.
Both Officer Williams and Investigator Leonard testified that defendant responded in the affirmative when Officer Williams asked him to submit to having his blood drawn. During cross-examination, Officer Williams denied having any recollection of defendant's having indicated that he did not want to take the test. This competent evidence fully supports the trial court's finding "[t]hat Officer Williams asked the defendant to submit to a blood analysis and the defendant consented." This finding of fact is therefore conclusive on appeal and fully supports the trial court's conclusions of law that none of defendant's constitutional or statutory rights were violated in obtaining his blood for chemical analysis. Accordingly, the trial court did not err in denying defendant's motion to suppress.
No error.
Judges ROBERT C. HUNTER and STEELMAN concur.
Report per Rule 30(e).