STATE OF NORTH CAROLINA v. FRANKLIN D. GARDNER, JR.

No. 8327SC966

(Filed 5 June 1984)

1. **Constitutional Law § 77; Criminal Law § 161.1— questioning defendant concerning failure to make statement to officers—waiver of right to object**

Defendant waived his right to object to the cross-examination of him concerning his failure to give a statement to the police after his arrest in violation of his constitutional right to remain silent where trial counsel made no objections to the cross-examination and an exception was inserted into the record in violation of App. R. 10(b), and where defendant on appeal does not assert plain error in his cross-examination as a basis for either the pertinent assignment of error or the corresponding argument in his brief.

2. **Criminal Law § 111.1— instruction concerning elements of crime defendant previously charged with—no limiting instruction required**

There was no merit to defendant's contention that the trial judge erroneously instructed the jury on the elements of common law robbery, an offense defendant was not charged with, where the record revealed that defendant testified on direct examination that he had been convicted of common law robbery, that he was out on parole on the night of the offense and that as a condition of his parole, he could not travel to Gastonia. Since evidence of this prior crime was elicited as a part of defendant's defense and the definition was given for the purpose of clarifying an issue raised by defendant, the trial judge was not required to give a limiting instruction.

3. **Burglary and Unlawful Breakings § 7— conviction for felonious breaking and entering and felonious larceny—no error**

   The offenses of breaking or entering and larceny are not lesser-included offenses of one another; therefore, defendant could be properly convicted of felonious breaking and entering and felonious larceny.

   Judge WELLS dissenting in part and concurring in part.

APPEAL by defendant from *Ferrell, Judge.* Judgment entered 19 January 1983 in Superior Court, GASTON County. Heard in the Court of Appeals 13 March 1984.

Defendant was tried on charges of felonious breaking, entering and larceny. He was found guilty as charged and sentenced to concurrent six-year sentences.

Evidence for the State tends to show that during the evening of 7 July 1982 the home of Travis and Norma Barrow in Gastonia was broken into. Barrow testified that a console television, stereo, three guns, jewelry, a file cabinet and calculator were among the items taken.

Bobby Grigg offered the only evidence linking defendant to the crimes. He testified that he had known defendant for about eight years. Around 6:00 p.m. on 7 July 1982, Grigg was at his parents' house across from the Barrows' residence. Defendant and a man Grigg did not know stopped by the house and picked Grigg up. The three men drove around until 7:30 p.m., and defendant then returned Grigg to his parents' house. Later that evening as Grigg was walking to a friend's house, defendant and his companion drove up and asked Grigg to accompany them to Blacksburg, South Carolina.

On the way to Blacksburg, Grigg noticed guns, a television and stereo in the car. When Grigg asked defendant where he had obtained these items, defendant responded that he had broken into the Barrows' home. Defendant and his companion then removed a file cabinet from the car, tore the drawers out, retrieved a gun from one of the drawers and threw the cabinet in a field.

Grigg further testified that when he, defendant and his companion reached Blacksburg, defendant sold the guns to Bobby Cooper. Defendant took the television and stereo to his sister's house in Gaffney, South Carolina. The three men spent the night

with defendant's parents in Blacksburg. The next morning defendant's father drove Grigg to Gastonia.

A detective with the Cherokee County Sheriff's Department in Gaffney, South Carolina testified that three guns were recovered from Bobby Cooper. Barrow indicated that these guns looked like the ones taken from his home.

Defendant testified that he spent the evening of 7 July with his girl friend in Gaffney from 6:00 p.m. until midnight. His girl friend's testimony was consistent with this alibi. Defendant's father testified that he saw his son at home around 6:00 p.m. on 7 July. He later observed his son in bed around 1:00 a.m. Defendant was still in bed when his father left for work at 5:00 a.m. Defendant's father testified that he did not see Grigg in his home on 7 July and did not give him a ride to Gastonia.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Henry T. Rosser, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Marc D. Towler and Assistant Appellate Defender James A. Wynn, Jr., for defendant appellant.*

ARNOLD, Judge.

Defendant brings forward three assignments of error in his brief regarding his cross-examination, the court's conduct during the jury's deliberation and his conviction of felonious breaking and entering. We conclude that no reversible error was committed by the trial court.

[1] Defendant first assigns error to his cross-examination involving whether he gave the arresting officer a statement. He contends that his constitutional rights against self-incrimination and to due process of law were violated on cross-examination.

On direct examination defendant testified that his relationship with Grigg was not good, because Grigg had damaged defendant's car in 1979 and had stolen diet pills from him. Defendant further testified that prior to 7 July 1983 Grigg became angry with him, because he refused to lend Grigg money. Thereafter, on cross-examination, the following exchange occurred:

Q. Are you saying he's concocted this entire story because you didn't loan him some money when you were playing pool?

A. To tell you the truth, I don't know why he's got me in on this.

Q. You don't have any idea, do you?

A. No, sir.

Q. Did you have an occasion to talk with Detective Duncan?

A. No, sir.

. . . .

Q. You ever talk to any detective about this?

A. I talked to one. When they looked me up, they come and got me off my job, and I went down there in Gaffney, and they locked me up over there, and a detective and plain clothes and officer in a uniform come down there and got me and brought me up here.

Q. What, if any, statement did you give that officer?

A. Any statement?

Q. Yes, sir.

A. I didn't give him no statement.

Q. You didn't give him a statement, did you?

A. No, sir. He was asking me questions about this break-in.

Q. And you didn't give a statement, did you?

A. No, sir. I didn't know what he was talking about.

Defendant now argues that this cross-examination concerning defendant's failure to give a statement to the police after his arrest violated his constitutional right to remain silent. He bases his argument upon *State v. Lane*, 301 N.C. 382, 271 S.E. 2d 273 (1980). In *Lane* the North Carolina Supreme Court found a violation of defendant's constitutional rights where defendant was

asked on cross-examination if he had previously told police, any of the district attorneys or anyone else about the alibi to which he testified at trial. The Court concluded, "Since we cannot declare beyond a reasonable doubt that there was no reasonable possibility that this evidence might have contributed to defendant's conviction, we hold that it was sufficiently prejudicial to warrant a new trial." *Id.* at 387, 271 S.E. 2d at 277.

Defendant also relies upon *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed. 2d 91 (1976). The United States Supreme Court found error where defendants during their trial related for the first time that they were "framed" by narcotics agents and were cross-examined about their post-arrest silence concerning the "frame."

Both *Lane* and *Doyle* are distinguishable from the case before us, in that the defendant here was merely asked if he gave the arresting officer a statement. No clear implication was made regarding defendant's failure to tell the officer about his alibi. Defense counsel in *Lane* and *Doyle* also made timely objections to the cross-examination and these objections were overruled. Counsel properly preserved for appellate review these specific objections and assignments of error. Trial counsel in the present case made no objections to the cross-examination. Instead, appellate counsel, who is different from trial counsel, has sifted the record and inserted exceptions to the cross-examination in the record on appeal.

On numerous occasions our Supreme Court has stated "that a failure to except or object to errors at trial constitutes a waiver of the right to assert the alleged error on appeal. (Citations omitted.)" *State v. Oliver*, 309 N.C. 326, 334, 307 S.E. 2d 304, 311 (1983). This doctrine of waiver has been applied where appellant has raised constitutional errors in the introduction of evidence for which he noted no objection. *State v. Mitchell*, 276 N.C. 404, 172 S.E. 2d 527 (1970).

The subsequent insertion of "exception" in the record and trial transcript is also a violation of App. R. 10(b). "Were the rule otherwise, an undue if not impossible burden would be placed on the trial judge." *State v. Black*, 308 N.C. 736, 740, 303 S.E. 2d 804, 806 (1983).

State v. Gardner

The defendant on appeal violated App. R. 10(b) and waived his right to except to his cross-examination by not objecting to this evidence at the trial level.

Our distinguished colleague in his dissent has concluded that the allowance of defendant's cross-examination was "plain error," thus necessitating a new trial. As supporting authority he cites the application of the plain error rule in *State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983) (where defendant failed to object to jury instructions) and *State v. Black, supra* (where defendant failed to object to the admission of evidence). These cases are distinguishable, because the defendants therein specifically suggested plain error or highly prejudicial error to the appellate court by brief on that specific assignment of error.

The defendant on appeal has not asserted plain error in his cross-examination as a basis for either the pertinent assignment of error or the corresponding argument in his brief. He asserts only constitutional violations arising from his cross-examination. Since defendant did not object to cross-examination, he has waived any appellate review of these alleged violations.

Our Supreme Court recently adopted rules consistent with our holding.

1. A party may not, after trial and judgment, comb through the transcript of the proceedings and randomly insert an exception notation in disregard of the mandates of Rule 10(b).

2. Where no action was taken by counsel during the course of the proceedings, the burden is on the party alleging error to establish its right to review; that is, that an exception, "by rule or law was deemed preserved or taken without any such action," or that the alleged error constitutes plain error.

In so doing, a party must, prior to arguing the alleged error in his brief, (a) alert the appellate court that no action was taken by counsel at the trial level, and (b) establish his right to review by asserting in what manner the exception is preserved by rule or law or, when applicable, how the error amounted to a plain error or defect affecting a substantial right which may be noticed although not brought to the at-

tention of the trial court. We caution that our review will be carefully limited to those errors

> 'in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a "fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's findings that the defendant was guilty." '

*State v. Odom*, 307 N.C. at 660, 300 S.E. 2d at 378 (emphasis in original).

*State v. Oliver, supra* at 335-336, 307 S.E. 2d at 312.

[2] Defendant next assigns error to the trial judge's conduct during jury deliberation. After the jury began deliberating, they returned to the courtroom and requested the judge to define common law robbery. The jury continued their deliberation after the judge defined this offense.

Defendant concedes that he made no objection to the trial judge's definition, but argues that plain error was committed. He contends that the judge erroneously instructed the jury on the elements of common law robbery, an offense defendant was not charged with. He adds that the judge should have, at least, supplemented the definition with a limiting instruction; and that his failure to do so permitted the jury to consider defendant's prior conviction of common law robbery as substantive evidence of his propensity to commit the crimes of breaking, entering and larceny. We find no merit to this assignment of error.

The record on appeal reveals that defendant testified on direct examination that he had been convicted of common law robbery in 1980, that he was out on parole on 7 July 1982 and that as a condition of his parole he could not travel to Gastonia. The record further shows that the judge did not mention defend-

ant's prior conviction in his charge. Since evidence of this prior crime was elicited as part of defendant's defense and the definition was given for the purpose of clarifying an issue raised by defendant, the trial judge was not required to give a limiting instruction.

A limiting instruction is required only when evidence of a prior conviction is elicited on cross-examination of a defendant and the defendant requests the instruction. *See State v. Watson*, 294 N.C. 159, 240 S.E. 2d 440 (1978). In addition, evidence regarding prior convictions of a defendant is merely a subordinate feature of the case and, absent a request, the court is not required to give limiting instructions. *See State v. Witherspoon*, 5 N.C. App. 268, 168 S.E. 2d 243 (1969).

[3] In defendant's remaining assignment of error he argues that he was erroneously convicted of felonious breaking and entering, because this crime is a lesser included offense of the felonious larceny for which he was also convicted. A recent decision by this Court refutes this argument. In *State v. Smith*, No. 8316SC547 (filed 21 February 1984), certified to S.Ct. (30 March 1984), we concluded that "the offenses of breaking or entering and larceny, which require proof of different elements, are clearly separate and distinct crimes, neither one a lesser included offense of the other."

For the foregoing reasons, we find in defendant's trial

No error.

Judge BRASWELL concurs.

Judge WELLS concurs in part and dissents in part.

Judge WELLS dissenting in part and concurring in part.

I believe that the cross-examination of defendant as to his refusal to give the police a statement following his arrest violated defendant's constitutional rights against self-incrimination and denied him due process of law. The United States Supreme Court has held that ". . . it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at

trial." *Doyle v. Ohio*, 426 U.S. 610 (1976). *Doyle* was decided on facts which clearly indicate that a *Miranda* warning had been given. The record in the case *sub judice* is silent as to whether defendant was informed of his *Miranda* rights, but this distinction is of no import to this question. Chief Justice Branch, writing for our Supreme Court on this matter, stated:

> [W]e attach little significance to the fact that *Miranda* warnings were not given. With or without such warnings defendant's exercise of his right to remain silent was guaranteed by Article 1, Section 23, of the North Carolina Constitution and the fifth as incorporated by the fourteenth amendment to the United States Constitution. . . . Thus, any comment upon the exercise of this right, nothing else appearing, was impermissible.

(Citation omitted), *State v. Lane*, 301 N.C. 382, 271 S.E. 2d 273 (1980).

The state contends that *Doyle v. Ohio, supra* and *State v. Lane, supra* are not applicable to this case because the prosecutor did not ask why defendant failed to tell the police of his alibi, but only why he did not mention Griggs' ill will toward him when he was arrested. A close examination of the record reveals that this is not the case. While some of the prosecutor's questions relate to defendant's failure to tell the police of Griggs' motive to frame him, others are specifically directed to defendant's failure to give a statement about the break-in. Even if all the objectionable cross-examination had related to defendant's failure to tell the police of Griggs' possible motive for framing him, I fail to find any distinction which would render *Doyle* and *Lane* inapplicable. Interpreting the cross-examination in the light urged by the state, defendant is still being impeached by his post-arrest silence. Clearly defendant had no duty to inform the police of Griggs' motive, and the state's attempts to impeach defendant for his post-arrest silence are obviously a violation of his rights against self-incrimination as articulated in *Doyle* and *Lane*.

Next the state argues that defendant has waived his right to assert this error because his counsel failed to object to the prosecutor's questions at trial. It has long been the rule in North Carolina that an objection to, or a motion to strike, an offer of evidence must be made contemporaneously with the contested ac-

tion; and unless such objection was made, the party was held to have waived his right to object. *See State v. Banks*, 295 N.C. 399, 245 S.E. 2d 743 (1978). Recently, however, in *State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983) our Supreme Court adopted the "plain error" rule with respect to a defendant's failure to object to jury instructions under Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure. This rule was extended to failure to object to rulings, such as evidentiary rulings, governed by Rule 10(b)(1), in *State v. Black*, 308 N.C. 736, 303 S.E. 2d 804 (1983). In both cases the Supreme Court quoted with approval the following interpretation of the rule:

> [T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *"fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the . . . [error] had a probable impact on the jury's finding that the defendant was guilty." (Emphasis in original.)

*United States v. McCaskill*, 676 F. 2d 995 (4th Cir.), *cert. denied*, --- U.S. ---, 103 S.Ct. 381, 74 L.Ed. 2d 513 (1982). An examination of the record in this case indicates that there was a denial of defendant's fundamental rights of due process and against self-incrimination and that this error had a probable impact on the jury's verdict. My decision is based upon the following factors. This is a close case where the only evidence of defendant's guilt is the testimony of Griggs, who had served a prison sentence for breaking or entering and larceny and who was implicated in this crime by fingerprints found on the stolen file cabinet. Defendant, who also had a previous criminal record, relied upon an alibi defense which was supported by two witnesses. In this situation the crucial question for the jury was the credibility of defendant and Griggs. Defendant offered an explanation as to why Griggs would lie and implicate him. I believe that the prosecutor's effective, albeit improper, questions regarding defendant's failure to

inform the police of Griggs' motive probably substantially contributed to the jury's verdict. Therefore, for the trial court to allow such cross-examination was "plain error" which necessitates the granting of a new trial.

For the reasons given, I must respectfully dissent as to the majority disposition of defendant's first assignment of error. I concur as to the disposition of defendant's second assignment of error.