STATE OF NORTH CAROLINA v. JERMAINE JACKSON AND DANIEL LAMAR BROWN

No. COA02-1432

(Filed 4 November 2003)

**1. Robbery— sufficiency of evidence—discrepancies in evidence**

A motion to dismiss an armed robbery charge was correctly denied. Discrepancies in the testimony of a restaurant worker who may have participated in the robbery, his role in the crime, and conflicting testimony by another worker go to credibility and are for the jury to decide.

**2. Evidence— robbery victim's feelings—relevant to threat to her life**

The admission of a robbery victim's testimony about how she felt when a gun was put to her head was not plain error. She testified that she was intimidated and in fear, which was relevant to whether her life was threatened.

**3. Criminal Law— instructions—impeachment of witness with unrelated crimes—testimony on direct examination**

An armed robbery defendant was not entitled to a limiting instruction on impeachment with proof of unrelated crimes after he testified on direct examination about his prior crimes and convictions. He was not impeached.

Appeal by defendants from judgments entered 3 July 2002 by Judge Thomas D. Haigwood in Martin County Superior Court. Heard in the Court of Appeals 7 October 2003.

STATE v. JACKSON

[161 N.C. App. 118 (2003)]

*Attorney General Roy Cooper, by Special Deputy Attorney General George W. Boylan, for the State.*

*Thomas R. Sallenger, for defendant-appellant Jermaine Jackson.*

*The Smallwood Law Firm, by Teresa L. Smallwood, for defendant-appellant Daniel Lamar Brown.*

TYSON, Judge.

Jermaine Jackson and Daniel Lamar Brown ("defendants") appeal from a jury verdict finding defendants guilty of robbery with a dangerous weapon. We find no error.

## I. Facts

On 11 May 2001, two masked men robbed a Kentucky Fried Chicken ("KFC") in Williamston, North Carolina. Around 10:20 p.m., employees Prentes Manning ("Manning"), David Ritter ("Ritter"), and Marie Price ("Price"), the store manager, remained in the KFC. Price was working in her office at the back of the store and heard tapping on the drive-thru window. She got up to check the building. As she rounded the corner, she saw two black men standing by the window wearing dark clothes and holding guns. One of the men grabbed Price by the hair, yelled "[d]on't look bitch," and turned her around. The man demanded all the money in the store and held a gun to the back of her head. Price was taken into her office and was told to open the store safe. The other man yelled at Manning to get down onto the floor. Price gave one of the men the money by handing it over her shoulder and was told by him to lay on the floor. She removed between $3,200.00 and $3,500.00 from the safe. Price heard the door slam as the two men left the building. She got up, went to check on Manning, and attempted to call the police, but the telephone had been snatched from the wall. Price and Manning later reported the incident to the Martin County Sheriff's Department.

Price testified the two robbers fled from the store on bicycles. She was unable to positively identify either of the robbers and could not identify which robber had put the gun to her head. Price testified that Ritter and Manning quit their jobs at the KFC between ten to fifteen days after the robbery.

Manning testified that he had known defendant Brown all of his life and defendant Jackson for seven or eight years. Manning also tes-

tified that two or three weeks before the robbery, he had discussed with defendants the possibility of robbing the KFC. The trio also talked the day before the robbery. During the day of the robbery, defendants telephoned Manning and asked him if he would leave the back door unlocked. Manning stated that he was not sure and told them to call Ritter. Manning testified that Ritter did receive a call but that he did not know who it was from.

Manning testified that during the evening of the robbery, he and Ritter were standing outside smoking a cigarette when Price told them to return inside and finish their work. Manning left the rear door unlocked as he reentered the KFC. After Ritter finished his work, Manning let him out the front door and locked it back. The back door remained unlocked. Manning testified he heard Price scream shortly thereafter, went toward her, and saw that she was being held at gunpoint. He testified that defendant Jackson was wearing a mask and defendant Brown was wearing a scarf. One of the defendants put a gun in Manning's face and told him to lay on the floor, apparently to make him a "victim" of the robbery. Defendant Brown kicked Manning two or three times.

Detective Mercer, at the State Bureau of Investigation Office in Greenville, North Carolina, interviewed Manning. Manning told Detective Mercer that defendants had robbed Price and that he recognized their voices and clothing. Manning also agreed to have and record a conversation with defendant Brown. During the conversation, defendant Brown admitted to buying "weed" with the $1,500.00 taken from the KFC. The transcript of this conversation was read to the jury.

Somers Griffin ("Griffin") appeared on behalf of defendant Brown and testified that she had known Manning all of her life. Griffin testified that Manning told her on the night of the robbery that Wayne Reid and Terry Manning had robbed the KFC. Terris Reddick also testified for defendant Brown and stated that she had picked him up at 9:40 p.m., on the night of the robbery, and they remained at their home all night. Defendant Jackson testified on his own behalf that he and Donnell Bonds had gone to a club in Greenville that night, arrived at 11:30 p.m., and stayed until 4:30 or 5:00 a.m.

The jury convicted both defendants of robbery with a dangerous weapon. Defendants appeal.

## II. Issues

Both Defendants assign and argue as error the trial court's denial of their motions to dismiss the charges of robbery with a dangerous weapon.

All other assignments of error were not argued in defendants' briefs and are waived. N.C.R. App. P. 28(b)(6) (2002).

Defendant Jackson additionally assigns and argues as error: (1) Price's testimony concerning how she felt when the gun was placed to her head and (2) the trial court's failure to grant his requested jury instruction regarding impeachment of a defendant by proof of unrelated crimes.

## III. Motion to Dismiss

[1] Defendants contend that the trial court erred in denying their motions to dismiss the charges of robbery with a dangerous weapon and argue the evidence was insufficient to convince a rational trier of fact of defendants' guilt beyond a reasonable doubt.

Our Supreme Court has held that in order to withstand a motion to dismiss, the State must present substantial evidence of each essential element of the offense charged and substantial evidence that the defendant is the perpetrator. *State v. Olson*, 330 N.C. 557, 564, 411 S.E.2d 592, 595 (1992). "The familiar test to be applied upon a motion to dismiss is whether there is substantial evidence of all material elements of the offense, considering all the evidence admitted in the light most favorable to the state and with the state entitled to every reasonable inference therefrom." *State v. Jones*, 47 N.C. App. 554, 559, 268 S.E.2d 6, 10 (1980). A defendant's motion to dismiss should be denied if a reasonable inference of a defendant's guilt may be inferred from the evidence. *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980). "Once the Court decides a reasonable inference of defendant's guilt may be drawn from the evidence, 'it is for the jurors to decide whether the facts satisfy them beyond a reasonable doubt that the defendant is actually guilty.'" *State v. Cross*, 345 N.C. 713, 717, 483 S.E.2d 432, 435 (1997) (quoting *State v. Murphy*, 342 N.C. 813, 819, 467 S.E.2d 428, 432 (1996)).

The essential elements of robbery with a dangerous weapon are: (1) an unlawful taking of personal property from the person of another; (2) by use of a dangerous weapon; (3) whereby that person's

life is threatened. *State v. Barden,* 356 N.C. 316, 352-53, 572 S.E.2d 108, 131-32 (2002). Price testified that two black males held her at gunpoint and forced her to give them the money from the KFC where she worked as store manager. State's witness Manning, who was working at the KFC at the time of the robbery, testified that he and defendants had discussed robbing the KFC on numerous occasions including the day of the robbery. Manning also identified defendants as the robbers by the clothing they wore and their voices. Manning recorded a post-robbery conversation with defendant Brown during which defendant Brown admitted buying "weed" with the money from the robbery. Manning made an identification of the voices on the tape at trial.

Defendants argue that because State witness Manning participated in the robbery, his identification of the defendants is suspect and not credible. Defendants further contend that defense witness Griffin's testimony disclosed that Manning's "boys" had robbed the KFC and named Wayne Reid and Terry Manning as the perpetrators of the crime.

Our Supreme Court has held that the credibility of a witness's testimony and the weight to be given that testimony is a matter for the jury, not for the court, to decide. *State v. Upright,* 72 N.C. 94, 100, 323 S.E.2d 479, 484 (1984); *see also State v. Miller,* 270 N.C. 726, 730, 154 S.E.2d 902, 904 (1967). When considering a motion to dismiss, the trial court is concerned "only with the sufficiency of the evidence to carry the case to the jury; it is not concerned with the weight of the evidence." *State v. Lowery,* 309 N.C. 763, 766, 309 S.E.2d 232, 236 (1983). The discrepancies in Manning's testimony, his role in the crime, and the conflicting testimony given by defense witness Griffin all go to Manning's credibility. The State presented sufficient evidence for the jury to determine which witnesses were credible. The jury has the ultimate responsibility of determining the credibility and the weight they give to Manning's testimony. This assignment of error is overruled as to both defendants.

## IV. Victim's State of Mind

[2] Defendant Jackson argues that the trial court erred in allowing Price to testify to how she felt when the gun was placed to her head. Defendant Jackson asserts that he was prejudiced because Price's statements were irrelevant and their sole purpose was to inflame the jurors' emotions against him.

N.C.R. App. P. 10(b)(1) states that a party must object during the trial to preserve a question for appeal. Defendant Jackson failed to object to the introduction of this evidence and asks this Court to examine the introduction of this evidence for plain error. Plain error is error "so fundamental as to amount to a miscarriage of justice . . . ." *State v. Bagley*, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987).

Evidence is relevant if it tends to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence. N.C. Gen. Stat. § 8C-1, Rule 401 (2001). The test of relevancy is whether the proffered evidence tends to shed any light on the subject of the inquiry or has the sole effect of exciting prejudice or sympathy. *State v. Braxton*, 294 N.C. 446, 462, 242 S.E.2d 769, 779 (1978).

Defendant Jackson was charged with robbery with a dangerous weapon. Our Supreme Court has held, in robbery with a dangerous weapon "force or intimidation occasioned by the use of firearms, is the main element of the offense." *State v. Mull*, 224 N.C. 574, 576, 31 S.E.2d 764, 765 (1944). Price testified: (1) that she considered the gun held to her head to be "mental rape," (2) that all of her "opinions and rights" were taken from her, and (3) that she was very afraid for her and Manning's lives while the gun was placed to her head. Her testimony was relevant to show that her life had been threatened and endangered with a firearm. She testified that she was in fear and intimidated proving the "main element of the offense" of robbery with a dangerous weapon. *Id.* Defendant Jackson's second assignment of error is overruled.

### V. Instruction Regarding Impeachment of Defendant by Proof of Unrelated Crimes

[3] Defendant Jackson argues that the trial court erred by failing to instruct the jury regarding N.C.P.I. Crim. 105.40, "Impeachment of the Defendant as a Witness by Proof of Unrelated Crime." This instruction reads:

When evidence has been received that at an earlier time the defendant was convicted of (a) criminal charge(s), you may consider this evidence for one purpose only. If, considering the nature of the crime(s), you believe that this bears on truthfulness, then you may consider it, together with all other facts and circumstances bearing upon the defendant's truthfulness, in decid-

ing whether you will believe or disbelieve his testimony at this trial. It is not evidence of the defendant's guilt in this case. You may not convict him on the present charge because of something he may have done in the past.

N.C.P.I. Crim. 105.40 (March, 1986).

The trial court must give a requested jury instruction when the request is a correct statement of law and is supported by the evidence in the case. *State v. Monk*, 291 N.C. 37, 54, 229 S.E.2d 163, 174 (1976).

The record shows that defendant Jackson took the stand and voluntarily testified upon direct examination concerning his prior crimes and convictions. Defendant Jackson's counsel asked the questions that elicited his responses. Defendant Jackson was not impeached on these prior crimes and convictions. He voluntarily admitted them, presumably to remove the sting before the State impeached him.

This Court, in *State v. Gardner*, explained that a defendant was not entitled to a limiting instruction where he offered this type of evidence. This Court held:

> The record on appeal reveals that defendant testified on direct examination that he had been convicted of common law robbery . . . Since evidence of this prior crime was elicited as part of defendant's defense . . . the trial judge was not required to give a limiting instruction. A limiting instruction is required only when evidence of a prior conviction is elicited on cross-examination of a defendant and the defendant requests the instruction. In addition, evidence regarding prior convictions of a defendant is merely a subordinate feature of the case and, absent a request, the court is not required to give limiting instructions.

*State v. Gardner*, 68 N.C. App. 515, 521-22, 316 S.E.2d 131, 134 (1984), *aff'd*, 315 N.C. 444, 340 S.E.2d 701 (1986) (citing *State v. Watson*, 294 N.C. 159, 240 S.E.2d 440 (1978) and *State v. Witherspoon*, 5 N.C. App. 268, 168 S.E.2d 243 (1969)) (internal citations omitted).

Having initially offered this testimony on direct examination, defendant was not entitled to a special instruction limiting consideration of such testimony to his "truthfulness." N.C. Gen. Stat. § 8C-1, Rule 609 (2001). Defendant Jackson's third assignment of error is overruled.

## VI. Conclusion

Defendants fail to show that the trial court erred in denying their motions to dismiss the charges of robbery with a dangerous weapon. Defendant Jackson fails to show that the trial court committed plain error by allowing Price to testify regarding how she felt when the gun was placed to her head and that the trial court erred in denying defendant Jackson's request for a special jury instruction.

No error.

Judges WYNN and LEVINSON concur.