HUNTER, JR., Robert N., Judge.
Kevin Antwan Shepherd ("Defendant") appeals his convictions for trafficking in cocaine by the unlawful possession of more than 28 grams but less than 200 grams of cocaine and of intentionally maintaining a dwelling for keeping or selling a controlled substance. Defendant argues the trial court erred when it denied his pretrial motion to compel disclosure of the identity of a confidential witness and when it failed to dismiss the charge of intentionally maintaining a dwelling for the keeping or selling of a controlled substance. We disagree.
I. Facts and Background
On 16 April 2012, a Guilford County grand jury indicted Defendant on one count of maintaining a dwelling for purposes of keeping and selling controlled substances, one count of possession with intent to sell or deliver marijuana, one count of felonious possession of marijuana, one count of trafficking in cocaine by manufacture, and one count of trafficking in cocaine by possession.
On 16 January 2013, Defendant filed a pretrial motion to compel disclosure of the identity of a confidential and reliable informant ("CRI") who aided the Greensboro Sheriff's Department's investigation, to suppress the results of a search of the apartment where Defendant was arrested, and to suppress Defendant's post-arrest statements. According to an affidavit filed in support of the Sheriff's Department's application for a search warrant, the CRI's tip began the investigation. The CRI subsequently assisted the Sheriff's Department in making several controlled drug buys from Defendant at 3220 S. Holden Road, Apartment G.
At a 12 March 2013 hearing, Defendant argued the State's privilege to withhold the CRI's identity must give way where the CRI's identity is relevant and helpful to the defense. Defendant further argued because the CRI had knowledge that others were at the residence, the CRI was a material and necessary witness to show third party guilt and non-exclusivity of Defendant's premises.
On 13 March 2013, the trial court denied Defendant's pre-trial motion in open court, holding "[D]efendant has failed to make a sufficient showing" the circumstances of the case mandated disclosure of the CRI. The trial court memorialized its ruling in an order dated 11 April 2013. Defendant's case then came for trial.
After hearing evidence from the State and Defendant, the trial court granted Defendant's motion to dismiss relating to the charge of felonious possession of marijuana. Subsequently, after three days of deliberations, the jury found Defendant guilty of misdemeanor possession of marijuana, but deadlocked on the remaining charges of maintaining a dwelling for keeping and selling cocaine and marijuana, trafficking in cocaine by manufacture, and trafficking in cocaine by possession. The trial court declared a mistrial as to the deadlocked charges, and gave Defendant a suspended sentence and eighteen months of supervised probation for his misdemeanor conviction.
On 6 August 2014, Defendant filed a motion in limine, seeking to exclude text messages gathered from cell phones seized by police at Defendant's arrest. On 29 September 2014, the trial court denied the motion. On 1 December 2015, Defendant relieved the public defender and retained hired counsel. On 21 January 2016, Defendant filed a motion to suppress, seeking again to exclude the aforementioned text messages. On 9 February 2016, prior to the start of Defendant's second trial, the court granted Defendant's motion to suppress, holding the cell phones discovered in the apartment were not covered by the scope of the search warrant. The trial court memorialized its decision in a written order dated 12 February 2016.
Defendant's second trial then began, and the evidence tended to show the following. Detective Brandon Mounce ("Detective Mounce") of the Guilford County Sheriff's Department testified first for the State. On 8 February 2012, Detective Mounce received a briefing from Detective Jeff Murphy ("Detective Murphy") regarding the Department's investigation of Defendant. Detective Murphy informed Detective Mounce they would serve a search warrant on 3220 South Holden Road, Apartment G and identified Defendant as a target of the investigation. Upon knocking and announcing their presence with no response, Detective Mounce rams open the door and enters Apartment G. He observes Defendant come out of a back hallway and into the front of the apartment. Detective Mounce and the other officers then secure the apartment. They discover Kim Brown ("Brown") in the apartment's sole bedroom. Brown is in ill health, and the detectives call EMS to assist him. Detective Mounce testified he understood Brown, and not Defendant, leased the apartment.
Detective Mounce is assigned to search the apartment's kitchen. He discovers a set of digital scales and a series of small bags on the counter. Looking in the cabinets, Detective Mounce finds what he identifies as a "small amount of crack cocaine lying in a napkin," a bottle of inositol, plastic bags containing marijuana, and a jar containing marijuana. Behind the countertop microwave, Detective Mounce discovers "a glass jar containing a plastic fork which had cocaine residue on it." After searching the kitchen, Detective Mounce searches part of the living room. He discovers marijuana and money in a recliner.
Detective Gordan Snaden ("Detective Snaden") testified next. He participated in the search of the apartment and was assigned to search one of the hall closets. Inside the closet, Detective Snaden discovers and searches a blue jacket. He finds "a couple of baggies with some white powder" in them.
Corporal James Stevens ("Corporal Stevens") testified next. Upon entering the apartment, he observes Defendant standing in the hallway, near the closets. He searches the apartment's other hall closet and the bedroom. In the closet, underneath clothes stacked on a shelf, Corporal Stevens discovers two plastic bags containing a "white powdered substance." One of the bags contained a spoon. He discovers no drug paraphernalia in the bedroom.
Brian King ("King"), a forensic chemist for the State Bureau of Investigation testified next. King received and tested the evidence gathered from the apartment. King summarized the evidence he received from the Guilford County Sheriff's Department as follows:
[I]tem number one was a plastic bag containing two bags of white powder. Item two, plastic bag containing two bags of white powder. Item three, plastic bags containing beige rocks. Item four, three plastic bags containing vegetable matter. Item five, plastic bag containing vegetable matter. Item six, plastic bag containing vegetable matter. Item seven, bag containing 19 individual bags of green vegetable matter. Item eight, plastic bag containing vegetable matter. Item nine, plastic bag containing vegetable matter. Item 10, blunt cigarette. Item 11, plastic bag containing green vegetable matter.
King weighed and tested the white powder and determined it was 56.2 grams of cocaine hydrochloride mixed with inositol. He tested the beige rocks and determined they were 2.96 grams of cocaine base, also known as crack cocaine. King also weighed and tested the vegetable matter and determined it was 81 grams of marijuana.
Detective Murphy, the lead investigator, testified next. He began investigating Defendant in January 2012. After officers serve the warrant and secure the apartment, Detective Murphy enters and goes to the kitchen. He observes the rock Detective Mounce discovered in the kitchen cabinet. Next to the rock, he observes a bottle of sodium bicarbonate and a razor blade. Detective Murphy told the court in his experience, sodium bicarbonate is commonly used to convert powder cocaine into crack cocaine, and razors are used to cut crack cocaine into smaller pieces for sale. Detective Murphy also observes three bags containing what he identified as marijuana inside the refrigerator.
Detective Murphy then moves into the living room where Defendant sat. On the coffee table, he observes what he identified as a partially smoked marijuana cigarette in an ashtray and a marijuana grinder. On a shelf below the top of the coffee table, Detective Murphy finds $282.00 in cash, a wallet containing Defendant's identification, and a cell phone. Defendant tells Detective Murphy the cell phone belongs to him. Without being asked, Defendant directs Detective Murphy to the floor beside the couch, where he finds a glass jar containing 4.5 grams of marijuana and a plastic canister containing 19 one-gram bags of marijuana. Next to the canister was a bag containing a series of small ziplock bags identical to those in the canister. He then observes Detective Mounce search the recliner, where he discovers $1,780.00 and a small bag containing a half of a gram of marijuana. Detective Murphy then searches an end table next to the recliner, discovering a paper bag containing documents belonging to Defendant. These documents included mail bearing Defendant's name and his mother's address. Detective Murphy testified the items he discovered in the living room belonged solely to Defendant, and no other person's property was discovered there.
Detective Murphy then confers with the officers searching the bedroom. He confirms no drug paraphernalia was found in the bedroom, and a search of Mr. Brown's person turns up only $50.00 in cash.
After concluding the search of the apartment, detectives took Defendant into custody and transported him to an interview room at the Guilford County Sheriff's Department. Detective Murphy and Detective Tim Weavil ("Detective Weavil") then interviewed Defendant. Detective Murphy advised Defendant of his Miranda rights, and Defendant signed a written statement acknowledging and waiving his rights. During the interview, Defendant admitted to Detective Murphy:
[he] began selling cocaine and marijuana to supplement his income because he had recently lost his job and had actually become homeless. He stated that he had moved in with his cousin, identified as Mr. Brown ... who had let him come live at the apartment, and he was selling those drugs from the apartment. He stated also that he was kind of shocked because the day that I arrested him on February 8th was the day that he had possessed the most cocaine at one time he'd ever possessed and he'd got caught with that much.
Detective Murphy again asked Defendant about his living arrangements, and Defendant elaborated, "he would make his bed on the couch, and during the daytime put things away, and that's where he lived."
Detective Weavil then testified, and corroborated Detective Murphy's account of the interview, specifically stating "I remember [Defendant] saying that he was using that apartment to sell drugs."
After Detective Weavil's testimony, the State rested. Defendant moved to dismiss each of the charges for insufficient evidence. The trial court denied the motion. Defendant declined to put on any evidence. Defendant renewed his motion to dismiss and the trial court again denied the motion. After the charge conference and closing statements, the trial court instructed the jury.
The jury subsequently found Defendant guilty of intentionally maintaining a dwelling and of trafficking in cocaine by unlawful possession. The jury found defendant not guilty of trafficking in cocaine by manufacture. The trial court consolidated the charges and sentenced Defendant to a term of 35 to 43 months in prison and a mandatory fine of $50,000.00. Defendant gave notice of appeal in open court.
II. Jurisdiction
Defendant appeals the final judgment of the superior court after entering a plea of not guilty. As a result, this Court has jurisdiction to hear the appeal pursuant to N.C. Gen. Stat. §§ 7A-27(b)(1) and 15A-1444(a) (2015).
III. Standards of Review
This Court reviews both a trial court's denial of a motion to dismiss and a motion to compel de novo. State v. Sanders , 208 N.C. App. 142, 144, 701 S.E.2d 380, 382 (2010) ; see State v. Dark , 204 N.C. App. 591, 593, 694 S.E.2d 502, 504 (2010). Under de novo review, this Court "considers the matter anew and freely substitutes its own judgment for that of the trial court." Id . at 593, 694 S.E.2d at 504.
IV. Analysis
A. Confidential and Reliable Informant
Defendant argues the trial court erred in denying his motion to disclose the identity of the CRI, thereby violating his rights under the federal and state constitutions. However, because Defendant neither renewed his motion after the mistrial, nor raised any objection during the second trial, we conclude Defendant failed to preserve the error for review.
In order to preserve an issue for appellate review, the North Carolina Rules of Appellate Procedure require a party to present the trial court with "a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make...." N.C.R. App. P. 10(a)(1) (2016). A failure to preserve an issue for review "justifies an 'appellate court's refusal to consider the issue on appeal.' " State v. Maness , 363 N.C. 261, 273, 677 S.E.2d 796, 804 (2009) (quoting Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co., 362 N.C. 191, 195-96, 657 S.E.2d 361, 364 (2008) ).
When a trial court declares a mistrial, "in legal contemplation there has been no trial." State v. Harris, 198 N.C. App. 371, 376, 679 S.E.2d 464, 467 (2009) (quoting State v. Sanders , 347 N.C. 587, 599, 496 S.E.2d 568, 576 (1998) ). "Thus, when a defendant's trial results in a hung jury and a new trial is ordered, the new trial is a trial de novo , unaffected by rulings made therein during the original trial." State v. Macon , 227 N.C. App. 152, 156, 741 S.E.2d 688, 690 (2013) (quoting Harris, 198 N.C. App. at 376, 679 S.E.2d at 467 ) (internal quotation marks and alterations omitted).
In the instant case, Defendant filed his motion to compel prior to his first trial which ended in mistrial. Although Defendant made several pre-trial motions attempting to exclude evidence from the second trial, these motions did not mention the CRI, and the record discloses no attempt to renew the motion to compel after the mistrial. Further, the second trial transcript contains no evidence Defendant objected at trial regarding the identity of the CRI or the validity of any evidence gathered pursuant to the CRI's tip. Neither did he raise an objection based on any of the constitutional rights he now asserts on appeal. Consequently, we hold Defendant failed to preserve the issue, and decline to consider the issue on appeal.
B. Maintaining a Dwelling
Defendant next argues the trial court erred in failing to dismiss the charge of intentionally maintaining a dwelling for the keeping and selling of a controlled substance under N.C. Gen. Stat. § 90-108(a)(7) (2015). Specifically, Defendant argues the State failed to present sufficient evidence to establish he actually kept or maintained the apartment where the narcotics were found. We disagree.
In order to survive a motion to dismiss, the State must show "substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) defendant's being the perpetrator of such offense." State v. Scott , 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Smith, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). When ruling on a motion to dismiss, the trial court must view the evidence in the light most favorable to the State, "making all reasonable inferences from the evidence in favor of the State." State v. Kemmerlin, 356 N.C. 446, 473, 573 S.E.2d 870, 889 (2002). "The trial court in considering such motions is concerned only with the sufficiency of the evidence to carry the case to the jury and not with its weight." State v. Powell, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980). "Contradictions and discrepancies are for the jury to resolve and do not warrant dismissal." Id. at 99, 261 S.E.2d at 117.
In State v. Bowens , we listed seven factors to be considered when determining whether a defendant has kept or maintained a dwelling under N.C. Gen. Stat. § 90-108(a)(7). 140 N.C. App. 217, 221, 535 S.E.2d 870, 873 (2000). These factors include (1) ownership of the property; (2) occupancy of the property; (3) repairs to the property; (4) payment of taxes; (5) payment of utilities; (6) payment of repair costs; and (7) payment of rent. Id . at 221, 535 S.E.2d at 873. None of these factors are dispositive on their own. Id . at 221, 535 S.E.2d at 873. Particularly, we have held mere proof of occupancy, standing alone, is insufficient to support the element of maintaining a dwelling. State v. Kraus , 147 N.C. App. 766, 768-69, 557 S.E.2d 144, 147 (2001). Nonetheless, an admission by defendant that he or she resides at a specific address is substantial evidence of maintaining a dwelling and is sufficient to overcome a motion to dismiss. State v. Spencer , 192 N.C. App. 143, 148, 664 S.E.2d 601, 605 (2008).
At trial, the State presented the testimony of both Detectives Murphy and Weavil that Defendant admitted to residing in the apartment and using it to sell drugs. Detective Murphy in particular recounted Defendant describing to him exactly how he came to reside in the apartment and where he kept his bed. Consequently, we conclude there was substantial evidence to support the charge of maintaining a dwelling, and hold the trial court did not err in denying Defendant's motion to dismiss.
NO ERROR.
Report per Rule 30(e).
Judges CALABRIA and BERGER concur.