IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-500

Filed: 18 February 2020

Wake County, No. 15CRS222097

STATE OF NORTH CAROLINA

v.

JAMAR MEXIA DAVIS, Defendant.

Appeal by Defendant from judgment entered 7 November 2018 by Judge A. Graham Shirley in Wake County Superior Court. Heard in the Court of Appeals 13 November 2019.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Terence D. Friedman, for the State-Appellee.*

> *Office of the Appellate Defender, by Assistant Appellate Defender Amanda S. Hitchcock, for the Defendant-Appellant.*

COLLINS, Judge.

Defendant appeals from judgment for felony habitual driving while impaired, entered after a jury found Defendant guilty of misdemeanor driving while impaired, and Defendant stipulated to having been convicted of three prior offenses involving impaired driving. Defendant argues that the trial court erred when it refused to give a limiting jury instruction concerning Defendant's prior convictions and asks this Court to review sealed personnel records to determine whether the trial court failed

to provide him with information material and favorable to his defense. We discern no error.

## I. Background

On 4 October 2015, Defendant Jamar Mexia Davis was arrested for driving while impaired ("DWI"). On 15 December 2015, a grand jury indicted Defendant for misdemeanor driving while impaired, felony habitual driving while impaired, driving while license revoked, and transporting an open container of an alcoholic beverage after consuming alcohol.

On 10 May 2016, prior to a trial on all the charges ("first trial"), Defendant filed a motion to release personnel records, seeking the release and in camera review of the arresting officers' personnel records to determine whether they contained any impeachment evidence. The State did not object to Defendant's motion. That same day, the trial court entered an order compelling the production of the personnel records for in camera review. On 9 June 2016, the trial court entered an order denying release of the personnel records ("Order Denying Release") because, after reviewing the records in camera, the trial court determined the records did not contain material that was "favorable and material" to Defendant. The trial court ordered that the records not be disclosed and ordered them to remain under seal.

On 15 August 2016, Defendant's case came on for trial in superior court. The jury found Defendant guilty of driving while license revoked and transporting an open

container of alcohol. The trial court declared a mistrial on the charges of misdemeanor DWI and felony habitual DWI after concluding the jury was "hopelessly deadlocked."

Defendant appealed the Order Denying Release and his convictions for driving while license revoked and transporting an open container of alcohol to this Court. On 6 March 2018, this Court found no merit in Defendant's appeal of the Order Denying Release and affirmed his convictions. *State v. Davis*, COA17-615, 2017 WL 3222366, at *11 (N.C. Ct. App. Mar. 6, 2018) (unpublished).

On 5 November 2018, Defendant was retried on the charges of misdemeanor DWI and felony habitual DWI ("second trial"). On 6 November 2018, the jury found Defendant guilty of misdemeanor DWI. Defendant stipulated to attaining three prior DWI convictions within the past 10 years. The trial court arrested judgment on the misdemeanor DWI conviction and entered judgment and commitment on the felony habitual driving while impaired, and sentenced Defendant to an active term of 19 to 32 months' imprisonment. From entry of this judgment, Defendant gave notice of appeal in open court.

## II. Discussion

Defendant (1) argues that the trial court reversibly erred by refusing his request to give a limiting instruction to the jury that evidence of Defendant's prior convictions be used for purposes of truthfulness only and (2) asks this Court to review

the sealed personnel records to determine if the trial court, after its in camera review, failed to provide him with information material and favorable to his defense.

## 1. *Refusal to Give Limiting Instruction*

### Preservation of Argument for Appellate Review

As a preliminary matter, we first address the State's contention that Defendant failed to preserve this issue for appellate review because he failed "to object on any relevant grounds during [his] own testimony about his prior convictions . . . ." However, the State mischaracterizes Defendant's argument on appeal. Defendant does not argue that the testimonial evidence of his prior convictions was improperly admitted, but instead argues that the trial court erred by refusing his request to give a limiting instruction to the jury regarding his prior convictions.

At the charge conference, Defendant requested the trial court give North Carolina Pattern Jury Instruction 105.40 in its pattern form. The trial court refused to give the instruction in its entirety. Defendant objected and the trial court noted his objection. Defendant's request and objection were made "before the jury retire[d] to consider its verdict, [and] stat[ed] distinctly that to which objection [was] made and the grounds of the objection . . . ." N.C. R. App. P. 10(a)(1)(2). The issue of whether the trial court erred in refusing Defendant's request for a limiting instruction is thus preserved for this Court's review.

### Analysis

Defendant argues that the trial court erred by failing to instruct the jury regarding North Carolina Pattern Jury Instruction 105.40, "Impeachment of the Defendant as a Witness by Proof of Unrelated Crime." This instruction reads:

> Evidence has been received concerning prior criminal convictions of the defendant. You may consider this evidence for one purpose only. If, considering the nature of the crime(s), you believe that this bears on the defendant's truthfulness, then you may consider it, and all other facts and circumstances bearing upon the defendant's truthfulness, in deciding whether you will believe the defendant's testimony at this trial. A prior conviction is not evidence of the defendant's guilt in this case. You may not convict the defendant on the present charge(s) because of something the defendant may have done in the past.

N.C.P.I.—Crim. 105.40 (2018).

"Whether a jury instruction correctly explains the law is a question of law . . . ." *State v. Barron*, 202 N.C. App. 686, 694, 690 S.E.2d 22, 29 (2010). Questions of law "regarding jury instructions are reviewed *de novo* by this Court." *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009).

"A limiting instruction is required only when evidence of a prior conviction is elicited on cross-examination of a defendant and the defendant requests the instruction." *State v. Gardner*, 68 N.C. App. 515, 522, 316 S.E.2d 131, 134 (1984), *aff'd*, 315 N.C. 444, 340 S.E.2d 701 (1986) (citations omitted). Where evidence of prior convictions is elicited "as part of defendant's defense . . . , the trial judge [is] not required to give a limiting instruction." *Id.* at 521-22, 316 S.E.2d at 134 ("[D]efendant

testified on direct examination that he had been convicted of common law robbery in 1980 . . . . Since evidence of this prior crime was elicited as part of defendant's defense and . . . was . . . for the purpose of clarifying an issue raised by defendant, the trial judge was not required to give a limiting instruction.").

In *State v. Jackson*, 161 N.C. App. 118, 588 S.E.2d 11 (2003), defendant was not entitled to a special instruction limiting consideration of his testimony regarding his prior conviction to his "truthfulness" where defendant "initially offered this testimony on direct examination[.]" *Id.* at 124, 588 S.E.2d at 16.

> The record show[ed] that defendant Jackson took the stand and voluntarily testified upon direct examination concerning his prior crimes and convictions. Defendant Jackson's counsel asked the questions that elicited his responses. Defendant Jackson was not impeached on these prior crimes and convictions. He voluntarily admitted them, presumably to remove the sting before the State impeached him.

*Id.* at 124, 588 S.E.2d at 15-16.

Here, as in *Gardner* and *Jackson*, Defendant took the stand and testified upon direct examination concerning his prior convictions as follows:

> [Defendant's Attorney]: Who was driving?
>
> . . . .
>
> [Defendant]: Nick was driving the whole time. See, I don't drive because, honestly, I have priors.
>
> . . . .
>
> [Defendant's Attorney]: Why [were you in the driver's seat]?

[Defendant]: Because I thought about driving, but I teach kids now and it's very important that one of the things we talk about is making the right decision. And for me, it's the wrong decision to drive at any point in my life right now, especially after consuming any amount of alcohol.

. . . .

[Defendant's Attorney]: All right. Where -- why -- when the police arrived, you seemed a bit disoriented. What was causing that?

[Defendant]: Well, I had made the decision long before Officer Simon came not to go anywhere, to make arrangements to get picked up. I know better at this point in my life. So decision had been made not to drive. Period. And so I sat in the car. I wasn't -- it was a rain storm. And I was making arrangements for a friend to come -- I don't have Uber -- called Darnell. He wasn't answering the phone. I was talking on the phone to a previous friend, but she lives in Chicago. But I fell asleep making arrangements to get picked up some kind of way.

. . . .

[Defendant's Attorney]: Well, at the back of the car, the video shows you at some point leaning against the car. Why did you do that?

[Defendant]: Well, I was out there for a while talking to the officers. I understand that when they approached me, what it looks like. And I also understand that in my past experiences with -- with who I am and my background, my experience with law enforcement is different. Maybe -- I don't know how many people can relate, but it's very different, which is why I took the stand to tell you guys I didn't answer too many questions, because they have a tendency to misspeak as they call it. Not anything against the officers. I can't really explain why that is. But I don't hold any ill will towards the officer. And I would hope that he doesn't have any ill will towards me. But I took the stand to let you guys know that the truth is that I made the right decision that night not to go anywhere. And it's through my experiences that I have had with law

enforcement that I did not want to talk to the officers about that.

. . . .

[Defendant]: I will let the jury know that I am before you today in the presence of a higher server speaking the honest truth, and I had made the decision not to drive that night. Absolutely. Unequivocally. And that's what you found me in a deep sleep with -- you know, sometimes I might drool depending on how tired I am. I'm a man with -- I'm not perfect. And I want you to know that I do have prior DUI convictions. I have driven without a license before. I have another charge of sneaking into a movie theater, it's called defrauding [an] innkeeper.

. . . .

[Defendant]: This is relevant because I want to know -- I want you guys to know that I have been very truthful. . . .

Defendant's counsel asked the questions that elicited Defendant's responses. Defendant voluntarily admitted to his prior convictions, using them as a basis to explain why he did not drive on the night in question and why he refused to answer the officers' questions. On appeal, Defendant specifically asserts that he offered this testimony at trial as an "important defense strategy of preempting a damaging cross-examination[.]" Accordingly, Defendant was not entitled to the North Carolina Pattern Jury Instruction 105.40 limiting consideration of his testimony regarding his prior DWI convictions to his "truthfulness[.]" *Gardner*, 68 N.C. App. at 521-22, 316 S.E.2d at 134; *Jackson*, 161 N.C. App. at 124, 588 S.E.2d at 15.

On cross-examination, the State asked Defendant:

[State]: And you indicated that you do have prior charges of driving while impaired.

[Defendant]:  Yes.

[State]:  In fact, you've been convicted of driving while impaired –

[Defendant's Attorney]:  I ask the question be phrased in its proper manner.

. . . .

[State]:  Mr. Davis, you have been convicted in Wake County of impaired driving in 2015, weren't you?

[Defendant]:  Yes.

[State]:  And you were also convicted in Sampson County of impaired driving in 2010, weren't you?

[Defendant]:  Yes.

[State]:  And this charge has been pending for about three years, hasn't it?

[Defendant]:  Yes.

[State]:  How many court appearances do you think that you've made during the pendency of each of these impaired driving cases?

[Defendant]:  Couldn't give you an answer.

[State]:  More than --

[Defendant]:  Been going on nearly all my life.

[State]:  So --

[Defendant]:  Adult life.

[State]: So would you say that you've been to court for these charges more than ten times?

[Defendant]: Yes.

[State]: Administrative dates, review dates, things like that?

[Defendant]: Yes.

[State]: I'm sure that you have seen other DWI cases play out in court, haven't you?

[Defendant's Attorney]: Object to relevance, Judge.

The Court: Overruled.

[Defendant]: No.

[State]: When you've been to court on those prior occasions, you haven't seen any other cases of driving while impaired?

[Defendant]: No. I'm tired of coming to court.

[State]: On prior occasions when you appeared in court, were there also other defendants who appeared in court who were facing charges of driving while impaired?

[Defendant]: I -- I -- I -- I can't answer that. I don't know. I don't pay attention to other charges. I listen for my name. My name is called, I answer.

[State]: Okay. So, I mean, you've been through this process before.

[Defendant]: Yes.

This exchange confirmed what Defendant had earlier stated on direct examination: "I have priors" and "I do have prior DUI convictions." The State's cross-

examination of Defendant pertained to the convictions to which Defendant had previously voluntarily admitted, clarified the dates of the offenses, and was the only time that the State questioned Defendant about his prior convictions; this limited line of questioning was not impeachment. *See State v. Marslender*, 222 N.C. App. 318, 2012 WL 3192640 (2012) (unpublished) (determining that the questions posed on cross examination, clarifying the nature of the defendant's prior convictions, "was the only time the State questioned [d]efendant about his prior convictions and, . . . we do not construe that line of questioning as impeachment"); *see also State v. Nelson*, 298 N.C. 573, 598, 260 S.E.2d 629, 647 (1979) (evidence which aids in "clarify[ing] an uncertainty which [the defendant] had already admitted" is not impeachment). As the State's clarification of Defendant's prior convictions did not constitute impeachment, Defendant was not entitled to a limiting instruction.

Defendant argues that this Court's decision in *Jackson* required Defendant to make an unfair choice because it forces "defendants to choose between the common strategy of mitigating a damaging cross-examination about prior convictions and preserving their right to ask that the evidence of those convictions be limited to its only permissible purpose." Defendant thus argues, "that decision should be overruled." We are bound by *Jackson*, and Defendant's argument that *Jackson* should be overruled is misplaced before this Court. *See In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where a panel of the Court of Appeals has decided

the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court.").

*2. Review of Sealed Records*

Defendant next asks this Court "to review the sealed records in this case to determine if the trial court, after its *in camera* review, failed to provide him with information material and favorable to his defense."

<u>Preservation of Argument for Appellate Review</u>

The State argues that Defendant failed to preserve this issue for appellate review because Defendant, in his second trial, failed to move the trial court to review the officers' personnel records. Thus, we must first determine whether this issue is properly before this Court.

A mistrial has the legal effect of "no trial." *State v. Harris*, 198 N.C. App. 371, 376, 679 S.E.2d 464, 468 (2009). Thus, when a defendant's trial results in a hung jury and a new trial is ordered, the new trial is an entirely separate legal affair from the original trial, unaffected by the parties' requests, objections, and motions, and the trial court's rulings made therein during the original trial. *State v. Macon*, 227 N.C. App. 152, 156, 741 S.E.2d 688, 690 (2013); *see State v. Shepherd*, 796 S.E.2d 537, 538 (N.C. Ct. App. 2017) (unpublished) (determining that the defendant failed to preserve an issue for appeal where defendant filed a motion to compel prior to his first trial which ended in mistrial, did not renew the motion after the mistrial, and did not

object at trial). Accordingly, a defendant may not rely upon a motion made at an original trial to preserve issues for appeal following his conviction in a subsequent trial.

Defendant filed a motion to release the officers' personnel records prior to the first trial; the first trial ended in a mistrial on the charges of misdemeanor DWI and felony habitual DWI. There is no record evidence in this appeal that Defendant made any request or motion asking the trial court to review the officers' personnel records prior to the second trial. Moreover, Defendant does not claim or argue on appeal that he moved the trial court prior to his second trial to review the records or that he requested a review of the records at his second trial. Thus, the motion to release made prior to his first trial had no effect in the second trial. *Shepherd,* 796 S.E.2d at 538. As Defendant made no timely request or motion of the trial court, he has failed to preserve this issue for our review. N.C. R. App. P. 10(a)(1).

## III. Conclusion

As Defendant offered evidence of his prior convictions on direct examination as part of his defense, Defendant's credibility was not impeached and thus the requested instruction was not warranted. Therefore, the trial court did not err when it denied Defendant's request for a jury instruction limiting the testimony to his truthfulness. Moreover, because Defendant made no motion to release prior to his second trial and did not request review at his second trial, he failed to preserve the issue on appeal.

NO ERROR.

Judges TYSON and YOUNG concur.