An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-424

Filed 4 June 2025

Buncombe County, Nos. 21CRS89660-100, 21CRS89661-100, 21CRS89662-100, 21CRS89663-100, 21CRS89664-100

STATE OF NORTH CAROLINA

v.

TRAVIS CHRISTOPHER HAHN, Defendant.

Appeal by Defendant from judgment entered 27 July 2023 by Judge Jacqueline D. Grant in Buncombe County Superior Court. Heard in the Court of Appeals 28 January 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Daniel K. Covas, for the State.*

> *Richard Croutharmel, for Defendant-Appellant.*

CARPENTER, Judge.

Travis Christopher Hahn ("Defendant") appeals from judgment entered after a jury found him guilty of: three counts of assault on a government official; one count of disorderly conduct; one count of resisting, delaying, or obstructing a public officer ("RDO"); and two counts of malicious conduct by a prisoner. On appeal, Defendant

argues the trial court erred by denying his motion to dismiss and request for a special jury instruction. Defendant also asserts an ineffective assistance of counsel claim ("IAC"). Defendant concedes his notices of appeal are defective and filed a petition for writ of certiorari ("PWC") requesting this Court exercise its discretion and allow full appellate review. After careful review, we deny the PWC and dismiss Defendant's appeal without prejudice to Defendant's statutory right to file a motion for appropriate relief with the trial court.

## I. Factual and Procedural Background

On 7 February 2022, a Buncombe County grand jury indicted Defendant for: three counts of assault on a government official; one count of disorderly conduct; one count of RDO; and two counts of malicious conduct by a prisoner. Defendant's case proceeded to trial on 25 July 2023. The evidence tended to show the following.

On 13 November 2021, Kelvis Brewer, an African-American tennis professional, was in his office at the Aston Park Tennis Center in Asheville, North Carolina (the "Park") when two startled women came into the office to tell Brewer and his co-worker, Dawn Johnson, that a man, later identified as Defendant, was on the tennis courts "saying nasty things" to them and the other female tennis players. The women asked Brewer if he would come down to the tennis courts and talk to Defendant. Brewer and Johnson exited the office, which was located atop a hill overlooking the tennis courts. From their vantage point, Brewer and Johnson observed Defendant standing alone on court four, the court adjacent to the women.

Brewer yelled down to Defendant, instructing him to leave the tennis court because he was not permitted to enter the courts without paying the required fee. Defendant asked if he could be on the sidewalk, to which Brewer responded, "sure, you can be on the sidewalk. Just please don't harass the ladies."

Shortly after Brewer and Johnson went back inside the office, the women returned and informed Brewer that Defendant was still nearby "saying nasty things" to them. Brewer and Johnson exited the office once again. This time, Brewer told Defendant to leave the area. In response, Defendant "started saying all kinds of crazy stuff" including yelling profanities and racial slurs at Brewer. Defendant also threatened Brewer, saying, "I'm going to come back every day and kill you" and "I'm going to come down here every day [and] find out where you live." Defendant started to walk away, but stopped, scooped a handful of mulch off the ground, and threw it in Brewer's direction.

Brewer began making his way down the hill toward Defendant, but Defendant started to run away while yelling "you're not going to touch me. You're not going to do anything to me. I'm going to come back and get you." Johnson testified that during the encounter, Defendant was using "a lot of the F word and a huge amount of the N word," most of which was directed at Brewer. Johnson also testified that Defendant's remarks were "nonstop" and that she felt unsafe during the incident.

Meanwhile, one of the female tennis players called the police to report Defendant's disturbing behavior. Officers Jonathan Fadler and Nick Jones, with the

Asheville Police Department, responded to the call. When they arrived at the Park, Officer Fadler spoke with Johnson and the female tennis players to obtain information and a description of Defendant. From the witnesses, officers learned Defendant had used racial slurs and caused "disturbances" at the Park. Officers located Defendant sitting at a gazebo nearby and approached him.

Officers told Defendant they had received a call about a disturbance on the tennis courts. Defendant said he was busy "cleaning his fingernails and didn't want to talk" to them. When officers asked Defendant for his identification, he refused, stood up, and started walking away. At this moment, Officer Fadler realized he recognized Defendant from previous encounters so he radioed dispatch for a warrant check. Meanwhile, Officer Jones followed Defendant while continuing to ask him questions. Then, Officer Jones "went hands on with [Defendant]" in an attempt to place him in custody with Officer Fadler's assistance.

Defendant began "struggling" and "tensing up" and would not allow the officers to place him in handcuffs. After Defendant started kicking Officer Jones in the legs, Officer Fadler "hip tossed" Defendant to the ground and handcuffed him. Officers began escorting Defendant to a police car, but Defendant was "digging" his feet into the ground. As officers were walking with Defendant, a civilian approached to ask what was going on. Defendant kicked the civilian and knocked a stack of papers out of his hand.

Eventually, officers arrived at the police car and frisked Defendant for

weapons. While the search was ongoing, Defendant yelled "[Officer] Fadler's a dead bitch" and kicked Officer Fadler in the groin. Officers managed to place Defendant in the police car and called for a supervisor due to Defendant's use of force. Officer Lucas Lovelace arrived shortly thereafter.

Once Officer Lovelace arrived, Officer Jones began driving away with Defendant, but was forced to stop after approximately twenty yards because of Defendant's disruptive behavior. Officer Lovelace, hoping to de-escalate the situation, walked over to the police car and started talking to Defendant through the window. During the interaction, Defendant spit on Officer Lovelace and threatened to kill him. Officer Lovelace directed Officer Jones to roll up the window and proceed to the jail. Upon arrival at jail, Officer Lovelace attempted to place a spit hood on Defendant, but Defendant kicked him. Accordingly, officers placed Defendant in a restraint chair.

At the close of the State's evidence, Defendant made a motion to dismiss, which the trial court denied. During the charge conference, Defendant requested a jury instruction on the assault on a government official charges that would allow the jury to consider whether Defendant's arrest was lawful. Specifically, under this instruction, the jury would consider whether officers had probable cause to believe Defendant committed a crime, and if not, whether Defendant used reasonable force in resisting the arrest. *See* N.C.P.I.-Crim 208.81B. The trial court denied Defendant's request and instructed the jury according to the pattern jury instruction

for assault on an officer, thereby omitting any reference to the lawfulness of Defendant's arrest because the officers "ha[d] probable cause to arrest [Defendant] for disorderly conduct based solely on the information provided [] by the staff of the [Park] and the witnesses." *See* N.C.P.I.-Crim. 208.82.

The jury found Defendant guilty as charged. The trial court sentenced Defendant to between: twenty-one and thirty-five months in prison for the first count of malicious conduct; and twenty-one and thirty-five months in prison for the second count of malicious conduct, to run consecutively with the first count of malicious conduct. On the remaining convictions, the trial court sentenced Defendant to: seventy-five days in prison for one count of assault on a government official, to run consecutively with the second count of malicious conduct; and seventy-five days in prison for the remaining two counts of assault on a government official, one count of disorderly conduct, and one count of RDO, to run consecutively with the first count of assault on a government official. On 1 August 2023, Defendant filed written notice of appeal.

## II. Jurisdiction

As a threshold matter, we consider Defendant's PWC. On 31 July 2024, Defendant filed a PWC requesting this Court exercise its discretion to review the merits of his appeal. In his PWC, Defendant concedes his notice of appeal is defective in that it "fails to properly identify the judgments from which he appeals."

A notice of appeal must: (1) "specify the party or parties taking appeal;" (2)

"designate the judgment or order from which appeal is taken and the court to which appeal is taken;" and (3) "be signed by counsel of record for the party or parties taking the appeal." N.C. R. App. P. 4(b). Defendant's written notice of appeal failed to indicate the correct judgment from which appeal was taken. Specifically, the notice indicates Defendant is appealing a judgment of conviction entered on 11 August 2017 for a second-degree sex offense. This appeal, however, does not implicate a sex offense. Thus, Defendant's notice does not comply with Rule 4. Accordingly, we lack jurisdiction. *See State v. Hughes*, 210 N.C. App. 482, 484, 707 S.E.2d 777, 778 (2011) ("A failure on the part of the appealing party to comply with Rule 4 deprives this Court of jurisdiction to consider [the] appeal[.]").

A PWC is a "prerogative" writ which we may issue to aid our jurisdiction. *See* N.C. Gen. Stat. § 7A-32(c) (2023). Issuing a PWC, however, "is an extraordinary measure." *State v. Barton*, 295 N.C. App. 182, 186, 905 S.E.2d 230, 234 (2024). "Accordingly, a petitioner must satisfy a two-part test before we will issue the writ." *Id.* at 186, 905 S.E.2d at 234. "First, a writ of certiorari should issue only if the petitioner can show 'merit or that error was probably committed below.'" *Cryan v. Nat'l Council of YMCAs*, 384 N.C. 569, 572, 887 S.E.2d 848, 851 (2023) (quoting *State v. Ricks*, 378 N.C. 737, 741, 862 S.E.2d 835, 839 (2021)). "Second, a writ of certiorari should issue only if there are 'extraordinary circumstances' to justify it." *Id.* at 572–73, 887 S.E.2d at 851 (quoting *Moore v. Moody*, 304 N.C. 719, 720, 285 S.E.2d 811, 812 (1982)). "Ultimately, the decision to issue a writ of certiorari rests in the sound

discretion of the presiding court." *Id.* at 573, 887 S.E.2d at 851 (citing *Ricks*, 378 N.C. at 740, 862 S.E.2d at 838).

**A. Motion to Dismiss**

First, Defendant argues the trial court erred by denying his motion to dismiss the three counts of assault on a government official and the one count of RDO because Officer Fadler did not have probable cause to arrest him for disorderly conduct. Specifically, Defendant asserts the evidence was insufficient to establish that Officer Fadler was discharging his official duties since Defendant was resisting an unlawful arrest. We disagree.

"In ruling on a motion to dismiss, the trial court need determine only whether there is substantial evidence of each essential element of the crime and that the defendant is the perpetrator." *State v. Call*, 349 N.C. 382, 417, 508 S.E.2d 496, 518 (1998) (citing *State v. Sexton*, 336 N.C. 321, 361, 444 S.E.2d 879, 902 (1994)). "Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion." *State v. Mann*, 355 N.C. 294, 301, 560 S.E.2d 776, 781 (2002) (citing *State v. Frogge*, 351 N.C. 576, 584, 528 S.E.2d 893, 899 (2000)). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994) (citing *State v. Sumpter*, 318 N.C. 102, 107, 347 S.E.2d 396, 399 (1986)).

### 1. Assault on a Government Official and RDO

Defendant's motion to dismiss argument concerns the charges for assault on a government official and RDO. A person commits an assault on a government official, a Class A1 misdemeanor, if "in the course of [an] assault, assault and battery, or affray [he]: assaults an officer or employee of the State or any political subdivision of the State, when the officer or employee is *discharging or attempting to discharge his official duties*[.]" N.C. Gen. Stat. § 14-33(c)(4) (2023) (emphasis added).

The elements of RDO, a Class 2 misdemeanor, are:

> (1) the victim was a public officer; (2) the defendant knew or had reasonable grounds to believe the [officer] was a public officer; (3) the [officer] was *[lawfully] discharging or attempting to discharge a duty of his office*; (4) the defendant resisted, delayed, or obstructed the [officer] in discharging or attempting to discharge a duty of his office; and (5) the defendant acted willfully and unlawfully, that is intentionally and without justification or excuse.

*State v. Harper*, 285 N.C. App. 507, 511, 877 S.E.2d at 771, 776–77 (*purgandum*) (citing *State v. Peters*, 255 N.C. App. 382, 387, 804 S.E.2d 811, 815 (2017)); *see* N.C. Gen. Stat. § 14-223 (2023).

" 'The offense of [RDO], both at common law and under the statute . . . presupposes a lawful arrest.' " *State v. Smith*, 225 N.C. App. 471, 476, 736 S.E.2d 847, 851 (2013) (quoting *State v. Jeffries*, 17 N.C. App. 195, 198, 193 S.E.2d 388, 391 (1972) (citation omitted)). Indeed, "the State must prove that the arrest underlying a charge for [RDO] was lawful beyond a reasonable doubt." *Id.* at 476, 736 S.E.2d at

851. If the arrest is unlawful, the officer effectuating the arrest is considered the "wrongdoer" and the person being arrested may "resist[] by use of force, as in self-defense." *Jeffries*, 17 N.C. App. at 198, 193 S.E.2d at 391. Likewise, the offense of assaulting a public officer, "presupposes lawful conduct of the public officer . . . ." *Id.* at 198, 193 S.E.2d at 391. Thus, the success of Defendant's argument turns on whether his warrantless arrest was lawful.

### 2. Warrantless Arrest

"The Fourth Amendment of the United States [Constitution] protects individuals 'against unreasonable searches and seizures.'" *State v. Jackson*, 262 N.C. App. 329, 333, 821 S.E.2d 656, 661 (2018) (quoting *State v. Barnard*, 362 N.C. 244, 246, 658 S.E.2d 643, 645 (2008)); *see* U.S. Const. amend. IV; N.C. Const. art. I, § 20. "To be lawful, a warrantless arrest must be supported by probable cause." *State v. Zuniga*, 312 N.C. 251, 259, 322 S.E.2d 140, 145 (1984).

Specifically, an officer may effectuate an arrest for a misdemeanor committed outside of his presence without a warrant if he has probable cause to believe the individual "[h]as committed a misdemeanor, and: (1) [w]ill not be apprehended unless immediately arrested; or (2) may cause physical injury to himself or others, or damage to property unless immediately arrested[.]" N.C. Gen. Stat. § 15A-401(b)(2) (2023). "Probable cause for an arrest is 'a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty.'" *State v. Tappe*, 139 N.C. App. 33, 36, 533 S.E.2d

262, 264 (2000) (quoting *State v. Harris*, 279 N.C. 307, 311, 182 S.E.2d 364, 367 (1971)). "To justify a warrantless arrest, it is 'not necessary to show that the offense was actually committed, only that the officer had a reasonable ground to believe it was committed.'" *Id.* at 36, 533 S.E.2d at 264 (quoting *State v. Thomas*, 127 N.C. App. 431, 433, 492 S.E.2d 41, 42, (1997)). "The existence of such grounds is determined by the 'practical and factual considerations of everyday life on which reasonable and prudent people act.'" *Id.* at 36, 533 S.E.2d at 264 (quoting *State v. Crawford*, 125 N.C. App. 279, 281, 480 S.E.2d 422, 424 (1997)).

Defendant argues his arrest was unlawful because Officer Fadler did not have probable cause to arrest him for disorderly conduct. "Disorderly conduct is a public disturbance intentionally caused by any person who . . . [m]akes or uses any utterance, gesture, display or abusive language which is intended and plainly likely to provoke violent retaliation and thereby cause a breach of the peace." N.C. Gen. Stat. § 14-288.4(a)(2) (2023). This brings us to our primary consideration on appeal: whether Officer Fadler had probable cause to arrest Defendant for disorderly conduct.

### 3. Discussion

Here, in the light most favorable to the State, the evidence was more than sufficient to establish that Officer Fadler had probable cause to arrest Defendant for disorderly conduct. *See Rose*, 339 N.C. at 192, 451 S.E.2d at 223. Officer Fadler testified that he "got a call that a male was causing a disturbance in the [P]ark using racial slurs, stuff of that nature." He also testified that when he arrived at the Park,

he spoke with Johnson, to whom he referred to as "the reporting party," as well as the female tennis players to whom Defendant was saying "nasty things" on the tennis courts. Specifically, Officer Fadler learned from Johnson that Defendant, who was on the tennis courts unauthorized, was "using racial slurs and [] causing a disturbance[.]" Johnson also testified that she and the women provided officers with a description of Defendant. Moreover, when officers approached Defendant, he refused to answer any of their questions or give them any identifying information about himself.

In short, by the time officers arrested Defendant they were advised by several witnesses that Defendant was at the Park yelling racial slurs at Brewer, on the tennis courts saying "nasty things" to the women, and causing a disturbance. Although officers did not directly observe Defendant engaging this behavior, the officers had reasonable grounds to believe Defendant committed the crime of disorderly conduct. *See Harris*, 279 N.C. at 311, 182 S.E.2d at 367. Accordingly, Defendant's warrantless arrest was supported by probable cause. Therefore, Defendant cannot show merit or that error was probably committed below. *See Cryan*, 384 N.C. at 572, 887 S.E.2d at 851.

**B. Special Jury Instruction**

Next, Defendant argues the trial court erred by denying his request for a special jury instruction for the assault on a government official charges. We disagree.

"The trial court must give a requested jury instruction when the request is a correct statement of the law and is supported by the evidence in the case." *State v. Jackson*, 161 N.C. App. 118, 124, 588 S.E.2d 11, 15 (2003) (citing *State v. Monk*, 291 N.C. 37, 54, 229 S.E.2d 163, 174 (1976)).

The instruction Defendant requested would have allowed the jury to determine whether Defendant's arrest was lawful and if not, whether his use of force in resisting the arrest was reasonable—a determination that would have impacted whether Defendant acted without justification or excuse. *See* N.C.P.I.-Crim 208.81B. The trial court denied Defendant's request and instead instructed the jury in accordance with the assault on an officer instruction, which omits any reference to the lawfulness of Defendant's arrest. *See* N.C.P.I-Crim. 208.82.

Although Defendant's requested instruction was a correct statement of the law, it was not supported by the evidence. *See Jackson*, 161 N.C. App. at 124, 588 S.E.2d at 15. As previously discussed, Defendant's warrantless arrest for disorderly conduct was supported by probable cause. Therefore, Defendant cannot show merit or that error was probably committed below by the trial court's decision to instruct the jury in accordance with the assault upon an officer instruction. *See Cryan*, 384 N.C. at 572, 887 S.E.2d at 851.

### III. Conclusion

Defendant's arguments that the trial court erred by denying his motion to dismiss and declining his request for a special jury instruction are without merit.

Accordingly, in our discretion, we deny Defendant's PWC and dismiss his appeal without prejudice to Defendant's statutory right to file a motion for appropriate relief with the trial court.

DISMISSED.

Judges TYSON and FREEMAN concur.

Report per Rule 30(e).